IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

AXA EQUITABLE LIFE )
INSURANCE COMPANY, )
                                            )
        Plaintiff, )
                                            )           Case No. 5:06cv57 SPM/AK
vs. )
                                            )
LIONEL SANDS, CAROL ASHWORTH )
ANN MORTENSEN, ELOISE HEAPS & )
GUY HEAPS, )
                                            )
        Defendants. )
_____ )

## **INTERPLEADER COMPLAINT**

Plaintiff, AXA Equitable Life Insurance Company ("AXA Equitable"), hereby

sues the Defendants, Lionel Sands, Carol Ashworth, Ann Mortensen, Eloise Heaps and

Guy Heaps, and says:

### **Parties, Jurisdiction and Venue**

1.     This is an action for federal statutory interpleader pursuant to the Federal

Interpleader Act, 28 U.S.C. § 1335 and 28 U.S.C. § 2361.

2.     Plaintiff, AXA Equitable, is a New York corporation with its principal

place of business in New York.

3.     Defendant, Lionel Sands, is a resident of the State of Florida.

4.     Defendants, Carol Ashworth, Eloise Heaps and Guy Heaps are residents of

the State of Missouri.

CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.

2006 MAR -7 PM 4: 34

FILED

5.      Defendant, Ann Mortensen, is a resident of the State of Nevada.

6.      Each of the Defendants is a surviving relative of the insured, Gail Sands, deceased.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1335(a) because the adverse claimants are of diverse citizenship.

8.      Venue is appropriate in this Court pursuant to 27 U.S.C § 1397 because one of the adverse claimants resides in the judicial circuit in which this Court sits, as did the deceased.

9.      AXA Equitable is an insurance company which holds proceeds of a Flexible Premium Variable Life Insurance Policy ("Policy") issued to Gail Sands, deceased. A true and correct copy of the Policy is attached hereto as Exhibit "A".

10.     This action is brought to resolve multiple and conflicting claims which have been or may be asserted against the Policy issued by AXA Equitable.

11.     The total amount held by AXA Equitable constituting the Policy proceeds is $200,000.00. Interest in the amount of $28,345.20 has accumulated. Therefore, the total proceeds are $228,345.20.

12.     Pursuant to 28 U.S.C. § 2361, this Court may and should issue process for all Defendants and enter an order restraining all Defendants from instituting or prosecuting and proceeding in any state or United States Court affecting the funds involved herein until further order of this Court.

## Background Facts

13.     Gail Sands died on June 9, 2001, in Marianna, Florida. The medical examiner determined that the manner of death was homicide. A true and correct copy of the death certificate is attached hereto as Exhibit "B".

14.     The Jackson County Sheriff's Office named Defendant Lionel Sands, Gail Sands' husband, as the primary suspect in the insured's death. Mr. Sands is also the primary beneficiary of the Policy.

15.     To date, Gail Sands' death is still under investigation, no arrests have been made and no other suspects have been named.

16.     Gail Sands was survived by her parents, Defendants Guy and Eloise Heaps, and her sisters, Defendants Carol Ashworth and Ann Mortensen, as well as her husband, Defendant Lionel Sands.

## Interpleader

17.     Under the aforementioned facts, AXA Equitable is unable to determine which of the Defendants are entitled to the Policy proceeds.

18.     AXA Equitable claims no interest or title to the Policy proceeds it seeks to deposit other than being the current holder.

19.     AXA Equitable is ready, willing and able to pay the proceeds to the Court to be paid to the person or persons entitled to it.

20.     The conflicting actual claims by the Defendants represent factual and legal disputes which AXA Equitable is unable to resolve without assistance from this Court. Moreover, AXA Equitable is or may be exposed to multiple liability if it delivers to any of the Defendants any of the Policy proceeds.

3

21.     AXA Equitable has done nothing to cause Defendants' conflicting claims to the Policy proceeds and has taken every reasonable measure to resolve the matter without bringing this action.

22.     AXA Equitable is entitled to deposit and interplead the Policy proceeds based on the above facts.

23.     AXA Equitable has employed the law firm of Foley & Lardner LLP to represent it in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, AXA Equitable respectfully requests that this Court enter an Order:

a.     Directing the Clerk of the Court to accept deposit of AXA Equitable's check totaling $228,345.20 payable to the U.S. District Court representing the proceeds of the Policy and submitted herewith into an interest bearing account;

b.     Requiring Defendants to interplead and settle among themselves their respective shares, if any, of the funds deposited into the registry of the Court;

c.     Restraining each of the Defendants from instituting any action against AXA Equitable for the recovery of the amount of said Policy or any part thereof;

d.     Granting AXA Equitable an award of fees from the funds herewith deposited with the Court to pay the costs, attorneys' fees and expenses which AXA Equitable has been compelled to expend in this matter;

e.     Dismissing AXA Equitable from this action and declaring that AXA Equitable is discharged from any further liability for the funds which it is depositing with the Registry of the Court; and,

4

f.      Granting to AXA Equitable such further and other relief as the

Court deems just and proper.

Dated: March 7, 2006

Respectfully submitted,

Glenda L. Thornton
FL Bar No. 845027
Karusha Y. Sharpe
FL Bar No. 0550161
FOLEY & LARDNER LLP
106 East College Avenue, Suite 900
Tallahassee, Florida 32301-7732
Telephone - (850) 222-6100
Fax - (850) 561-6475

Attorneys for Plaintiff, AXA EQUITABLE
LIFE INSURANCE COMPANY



# AXA EQUITABLE LIFE INSURANCE COMPANY

## NAME CHANGE ENDORSEMENT

**Effective Date:  September 7, 2004**

This endorsement is made part of the policy, contract or certificate as of its Effective Date. It should be attached to and kept with the policy, contract or certificate.

Wherever the name of The Equitable Life Assurance Society of the United States or the Equitable appears in the policy, contract or certificate, the name AXA Equitable Life Insurance Company is hereby substituted.

In all other respects, the terms and provisions of the policy, contract or certificate remain unchanged and in full force and effect.

Christopher M. Condron
Chairman, President and
Chief Executive Officer

Pauline Sherman
Senior Vice President,
Secretary and Associate General Counsel

EXHIBIT

"A"

1290 Avenue of the Americas,
New York, New York 10104

2003AXA-ELAS

| | | |
|---|---|---|
| *INSURED PERSON* | GAIL J SANDS |  |
| *POLICY OWNER* | GAIL J SANDS | |
| *FACE AMOUNT OF INSURANCE* | $200,000 | **VARIABLE** |
| *DEATH BENEFIT* | OPTION A (SEE PAGE 6) | **LIFE** |
| *POLICY NUMBER* | 42 320 722 | **INSURANCE** |
| | | **POLICY** |

**COPY**

# We agree to pay the Insurance Benefit of this policy and to provide its other benefits and rights in accordance with its provisions.

### Flexible Premium Variable Life Policy

This is a flexible premium variable life insurance policy. You can, within limits:

- increase or decrease the Face Amount of Insurance;
- make premium payments at any time and in any amount;
- change the death benefit option;
- change the allocation of net premiums and deductions among your investment options; and
- transfer amounts among your investment options.

All of these rights and benefits are subject to the terms and conditions of this policy. All requests for policy changes are subject to our approval and may require evidence of insurability.

We will put your net premiums into your Policy Account. You may then allocate them to one or more investment divisions of our Separate Account (SA) and to our Guaranteed Interest Division (GID).

**The portion of your Policy Account that is in an investment division of our SA will vary up or down depending on the unit value of such investment division, which in turn depends on the investment performance of the corresponding portfolio of a designated investment company. There are no minimum guarantees as to such portion of your Policy Account.**

The portion of your Policy Account that is in our GID will accumulate, after deductions, at rates of interest we determine. Such rates will not be less than 4% a year.

**The amount and duration of the death benefit may be variable or fixed as described in this policy.**

This is a non-participating policy.

**Right to Examine Policy.** You may examine this policy and if for any reason you are not satisfied with it, you may cancel it by returning this policy with a written request for cancellation to our Administrative Office by the 10th day after you receive it. If you do this, we will refund the premiums that were paid on this policy.

*Pauline Sherman*

Pauline Sherman, Senior Vice President,
Secretary and Associate General Counsel

*Cule*

Christopher M. Condron, Chairman,
President and Chief Executive Officer

No. 90-300

# *Contents*

*Policy Information*   3

*Table of Guaranteed Maximum Cost of
Insurance Rates*   4

*Those Who Benefit from this Policy*   5

*The Insurance Benefit We Pay*   5

*Changing the Face Amount of Insur-
ance or the Death Benefit Option*   7

*The Premiums You Pay*   7

*Your Policy Account and How it
Works*   9

*Your Investment Options*   9

*The Value of Your Policy Account*   10

*The Cash Surrender Value of this
Policy*   12

*How a Loan Can Be Made*   13

*Our Separate Account (SA)*   14

*Our Annual Report to You*   15

*How Benefits are Paid*   15

*Other Important Information*   16

### *In this policy:*

*"We," "our,"* and *"us"* mean AXA Equitable Life Insurance Company.

*"You"* and *"your"* mean the owner of this policy at the time an owner's right is exercised.

Unless otherwise stated, all references to interest in this policy are effective annual rates of interest.

Attained age means age on the birthday nearest to the beginning of the current policy year.

### *Administrative Office*

The address of our Administ tive Office is shown on Pag You should send premiums correspondence to that add unless instructed otherwise.

*A copy of the application fo
policy and any additional be
riders are at the back of this
policy.*

# *INTRODUCTION*

The premiums you pay, after deductions are made in accordance with the Table of Expense Charges in the Policy Information section, are put into your Policy Account. Amounts in your Policy Account are allocated at your direction to one or more investment divisions of our SA and to our GID.

The investment divisions of our SA invest in securities and other investments whose value is subject to market fluctuations and investment risk. There is no guarantee of principal or investment experience.

Our GID earns interest at rates we declare in advance of each policy year. The rates are guaranteed for each policy year. The principal, after deductions, is also guaranteed.

The duration of life insurance coverage depends upon the amount in your Policy Account.

If death benefit Option A is in effect, the death benefit is the Face Amount of Insurance, and the amount of the death benefit is fixed except when it is a percentage of your Policy Account. If death benefit Option B-PLUS is in effect, the death benefit is the Face Amount of Insurance *plus* the amount in your Policy Account. The amount of the death benefit is variable. Under either option, the death benefit will never be less than a percentage of your Policy Account as stated on Page 6.

We make monthly deductions from your Policy Account to cover the cost of the benefits provided by this policy and the cost of any benefits provided by riders to this policy. If you give up this policy for its Net Cash Surrender Value, reduce the Face Amount of Insurance, or if this policy ends without value at the end of the grace period, we may deduct a surrender charge from your Policy Account.

This is only a summary of what this policy provides. You should read all of it carefully. Its terms govern your rights and our obligations.

POLICY INFORMATION

| | | |
|---|---|---|
| INSURED PERSON | GAIL J SANDS | |
| POLICY OWNER | GAIL J SANDS | |
| FACE AMOUNT OF INSURANCE | $200,000 | |
| DEATH BENEFIT | OPTION A (SEE PAGE 6) | |
| POLICY NUMBER | 42 320 722 | SEPARATE ACCOUNT FP |
| BENEFICIARY | LIONEL J SANDS, HUSBAND | |
| REGISTER DATE | APR 16, 1992 | ISSUE AGE     44 |
| DATE OF ISSUE | MAY 22, 1992 | SEX     FEMALE |
| INSURED PERSON'S STATE OF RESIDENCE | FLORIDA | NON-SMOKER |
| PARTIAL NET CASH SURRENDER VALUE WITHDRAWAL | MINIMUM WITHDRAWAL IS $500 | |
| POLICY LOAN | MINIMUM LOAN IS $500 | |
| TRANSFER | MINIMUM TRANSFER AMOUNT IS $500 | |

AN INITIAL PREMIUM PAYMENT OF $2,309.13 IS DUE ON OR BEFORE DELIVERY OF THE POLICY.

THE PLANNED PERIODIC PREMIUM OF $2,877.00 IS PAYABLE ANNUALLY.

PREMIUM PAYMENTS ARE FOR THE INSURANCE BENEFIT AND ANY ADDITIONAL BENEFIT RIDERS LISTED BELOW.

TERM INSURANCE ON ADDITIONAL INSURED OF $200,000
LIONEL SANDS , AGE 46 MALE NON-SMOKER

DISABILITY RIDER - WAIVER OF MONTHLY DEDUCTIONS

THE PREMIUM PAYMENTS SHOWN ABOVE MAY NOT BE SUFFICIENT TO CONTINUE THE POLICY AND LIFE INSURANCE COVERAGE IN FORCE TO THE FINAL POLICY DATE, WHICH IS THE POLICY ANNIVERSARY NEAREST THE INSURED PERSON'S 100TH BIRTHDAY. THE PERIOD FOR WHICH THE POLICY AND COVERAGE WILL CONTINUE IN FORCE WILL DEPEND ON: (1) THE AMOUNT, TIMING AND FREQUENCY OF PREMIUM PAYMENTS; (2) CHANGES IN THE FACE AMOUNT OF INSURANCE AND THE DEATH BENEFIT OPTIONS; (3) CHANGES IN THE INTEREST RATES CREDITED TO OUR GID AND IN THE INVESTMENT PERFORMANCE OF THE INVESTMENT DIVISIONS OF OUR SA; (4) CHANGES IN THE MONTHLY COST OF INSURANCE DEDUCTIONS FROM THE POLICY ACCOUNT FOR THIS POLICY AND ANY BENEFITS PROVIDED BY RIDERS TO THIS POLICY; AND (5) LOAN AND PARTIAL NET CASH SURRENDER VALUE WITHDRAWAL ACTIVITY.

90-300-3                              PAGE 3
                              (CONTINUED ON NEXT PAGE)

—TABLE OF EXPENSE CHARGES —

DEDUCTIONS FROM PREMIUM PAYMENTS:

CHARGE FOR APPLICABLE TAXES (OTHER THAN TAXES DISCUSSED ON PAGE 11):

1.750% OF EACH PREMIUM PAYMENT. THIS AMOUNT IS SUBTRACTED FROM EACH PREMIUM PAYMENT. WE RESERVE THE RIGHT TO CHANGE THIS PERCENTAGE TO CONFORM TO CHANGES IN THE LAW OR IF THE INSURED PERSON CHANGES RESIDENCE.

PREMIUM CHARGE:

4.00% OF EACH PREMIUM PAYMENT. WE RESERVE THE RIGHT TO CHANGE THIS CHARGE BUT IT WILL NEVER BE MORE THAN 4%.

DEDUCTIONS FROM YOUR POLICY ACCOUNT:

FIRST YEAR ADMINISTRATIVE CHARGE:

$55.00 IS DEDUCTED AT THE BEGINNING OF EACH POLICY MONTH DURING THE FIRST POLICY YEAR.

SUBSEQUENT YEARS ADMINISTRATIVE CHARGE:

$5.00 IS DEDUCTED AT THE BEGINNING OF EACH POLICY MONTH DURING EACH POLICY YEAR AFTER THE FIRST POLICY YEAR. WE RESERVE THE RIGHT TO CHANGE THIS CHARGE BUT IT WILL NEVER BE MORE THAN $8.00 A MONTH. CHANGES WILL BE AS DESCRIBED IN "CHANGES IN POLICY COST FACTORS" ON PAGE 16.

FOR PARTIAL WITHDRAWAL OF NET CASH SURRENDER VALUE:

$25.00, OR 2% OF THE AMOUNT WITHDRAWN IF LESS, IS DEDUCTED WHENEVER THERE IS A PARTIAL NET CASH SURRENDER VALUE WITHDRAWAL.

FOR AN INCREASE YOU ASK FOR IN THE FACE AMOUNT OF INSURANCE:

$1.50 FOR EACH $1,000 OF INSURANCE (BUT NOT MORE THAN $240 PER INCREASE).

FOR TRANSFERS:

WE RESERVE THE RIGHT TO CHARGE UP TO $25.00 FOR EACH TRANSFER OF AMOUNTS AMONG YOUR INVESTMENT OPTIONS.

POLICY INFORMATION CONTINUED—POLICY NUMBER   42 320 722

——————— TABLE OF MAXIMUM SURRENDER CHARGES ———————

| BEGINNING OF POLICY YEAR | CHARGE | BEGINNING OF POLICY YEAR | CHARGE |
|---|---|---|---|
| 1 | $1,452 | 9 | $1,452 |
| 2 | 1,452 | 10 | 1,431 |
| 3 | 1,452 | 11 | 1,189 |
| 4 | 1,452 | 12 | 947 |
| 5 | 1,452 | 13 | 705 |
| 6 | 1,452 | 14 | 463 |
| 7 | 1,452 | 15 | 221 |
| 8 | 1,452 | 16 AND LATER | 0 |

A SURRENDER CHARGE WILL BE SUBTRACTED FROM YOUR POLICY ACCOUNT IF THIS POLICY IS GIVEN UP FOR ITS NET CASH SURRENDER VALUE OR IF THIS POLICY TERMINATES WITHIN THE FIRST FIFTEEN POLICY YEARS. THE MAXIMUM CHARGE IN THE FIRST POLICY MONTH OF EACH POLICY YEAR IS SHOWN IN THE TABLE ABOVE (SUBJECT TO ANY APPLICABLE LIMITATIONS IMPOSED BY THE INVESTMENT COMPANY ACT OF 1940). AFTER THE NINTH POLICY YEAR, THE MAXIMUM CHARGE IN ANY OTHER POLICY MONTH WILL BE BASED ON THE NUMBER OF POLICY MONTHS SINCE THE BEGINNING OF THE POLICY YEAR.

THIS TABLE ASSUMES NO FACE AMOUNT INCREASES. SEE PAGE 12 FOR A DESCRIPTION OF SURRENDER CHARGES FOR FACE AMOUNT INCREASES.

IF THE FACE AMOUNT OF INSURANCE IS REDUCED WITHIN THE FIRST FIFTEEN POLICY YEARS, A PRO RATA SHARE OF THE APPLICABLE SURRENDER CHARGE AT THAT TIME MAY BE DEDUCTED FROM YOUR POLICY ACCOUNT. SEE PAGE 12 FOR A DESCRIPTION OF THE PRO RATA SURRENDER CHARGE.

*****ADMINISTRATIVE OFFICE:   EQUITABLE VARIABLE LIFE INSURANCE COMPANY*****
CHARLOTTE SERVICE CENTER
6301 MORRISON BOULEVARD
CHARLOTTE, NC  28211

90-300-3

POLICY INFORMATION CONTINUED – POLICY NUMBER   42 320 722

————————TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES————

GUARANTEED MAXIMUM MONTHLY RATES PER $1,000
OF NET AMOUNT AT RISK (SEE PAGE 9)

| INSURED PERSON'S ATTAINED AGE | MONTHLY RATE | INSURED PERSON'S ATTAINED AGE | MONTHLY RATE |
|---|---|---|---|
| 44 | $ 0.16083 | 79 | $ 5.00583 |
| 45 | 0.24917 | 80 | 5.59500 |
| 46 | 0.26583 | 81 | 6.27500 |
| 47 | 0.28417 | 82 | 7.06750 |
| 48 | 0.30417 | 83 | 7.98833 |
| 49 | 0.32500 | 84 | 9.02000 |
| 50 | 0.34917 | 85 | 10.16417 |
| 51 | 0.37500 | 86 | 11.40333 |
| 52 | 0.40500 | 87 | 12.74917 |
| 53 | 0.43917 | 88 | 14.19083 |
| 54 | 0.47417 | 89 | 15.75500 |
| 55 | 0.51167 | 90 | 17.44583 |
| 56 | 0.55000 | 91 | 19.30500 |
| 57 | 0.58917 | 92 | 21.39667 |
| 58 | 0.62583 | 93 | 23.84000 |
| 59 | 0.66500 | 94 | 26.92583 |
| 60 | 0.71167 | 95 | 31.31000 |
| 61 | 0.76583 | 96 | 38.50417 |
| 62 | 0.83500 | 97 | 52.27500 |
| 63 | 0.92167 | 98 | 83.33250 |
| 64 | 1.02417 | 99 | 83.33250 |
| 65 | 1.13583 | | |
| 66 | 1.25583 | | |
| 67 | 1.37750 | | |
| 68 | 1.50000 | | |
| 69 | 1.63167 | | |
| 70 | 1.78333 | | |
| 71 | 1.96583 | | |
| 72 | 2.19167 | | |
| 73 | 2.46750 | | |
| 74 | 2.79417 | | |
| 75 | 3.16417 | | |
| 76 | 3.57250 | | |
| 77 | 4.01250 | | |
| 78 | 4.48583 | | |

90-300-4                                           PAGE 4

POLICY INFORMATION CONTINUED—POLICY NUMBER  42 320 722

## TABLE OF GUARANTEED MAXIMUM RATES FOR
## DISABILITY WAIVER OF MONTHLY DEDUCTIONS

### GUARANTEED MAXIMUM MONTHLY COSTS OF RIDER AS A PERCENTAGE OF THE TOTAL MONTHLY DEDUCTION FROM THE POLICY ACCOUNT OF THE POLICY

| INSURED PERSON'S ATTAINED AGE | MONTHLY PERCENTAGE |
|---|---|
| 44 | 8.0% |
| 45 | 16.0% |
| 46 | 17.0% |
| 47 | 18.0% |
| 48 | 19.0% |
| 49 | 20.0% |
| 50 | 22.0% |
| 51 | 24.0% |
| 52 | 26.0% |
| 53 | 28.0% |
| 54 | 30.0% |
| 55 | 32.0% |
| 56 | 36.0% |
| 57 | 38.0% |
| 58 | 40.0% |
| 59 | 44.0% |
| 60 | 22.0% |
| 61 | 18.0% |
| 62 | 12.0% |
| 63 | 10.0% |
| 64 | 10.0% |

90-300-4

### TABLE OF GUARANTEED MAXIMUM RATES FOR
### TERM INSURANCE ON THE ADDITIONAL INSURED PERSON

GUARANTEED MAXIMUM MONTHLY RATES PER $1,000 OF TERM INSURANCE ON THE
ADDITIONAL INSURED PERSON

| ADDITIONAL INSURED PERSON'S ATTAINED AGE | MONTHLY RATE |
|---|---|
| 46 | $ 0.23833 |
| 47 | 0.32333 |
| 48 | 0.34917 |
| 49 | 0.37833 |
| 50 | 0.41000 |
| 51 | 0.44667 |
| 52 | 0.48917 |
| 53 | 0.53667 |
| 54 | 0.59250 |
| 55 | 0.65333 |
| 56 | 0.72167 |
| 57 | 0.79417 |
| 58 | 0.87250 |
| 59 | 0.96083 |
| 60 | 1.05917 |
| 61 | 1.16833 |
| 62 | 1.29417 |
| 63 | 1.43667 |
| 64 | 1.59833 |
| 65 | 1.77750 |
| 66 | 1.97083 |
| 67 | 2.18083 |
| 68 | 2.40583 |
| 69 | 2.65333 |

# *Those Who Benefit from this Policy*

**Owner.** The owner of this policy is the insured person unless otherwise stated in the application, or later changed.

If the insured person is living on the Final Policy Date defined in the Policy Information section, we will pay you the amount in your Policy Account on that date minus any policy loan and accrued loan interest. This policy will then end.

As the owner, you are entitled to exercise all the rights of this policy while the insured person is living. To exercise a right, you do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**Beneficiary.** The beneficiary is as stated in the application, unless later changed. The beneficiary is entitled to the Insurance Benefit of this policy. One or more beneficiaries for the Insurance Benefit can be named in the application. If more than one beneficiary is named, they can be classed as primary or contingent. If two or more persons are named in a class, their shares in the benefit can be stated. The stated shares in the Insurance Benefit will be paid to any primary beneficiaries who survive the insured person. If no primary beneficiaries survive, payment will be made to any surviving contingent beneficiaries. Beneficiaries who survive in the same class will share the Insurance Benefit equally, unless you have made another arrangement with us.

If there is no designated beneficiary living at the death of the insured person, we will pay the Insurance Benefit to the insured person's surviving children in equal shares. If none survive, we will pay the insured person's estate.

**Changing the Owner or Beneficiary.** While the insured person is living, you may change the owner or beneficiary by written notice in a form satisfactory to us. (You can get such a form from our agent or by writing to us at our Administrative Office.) The change will take effect on the date you sign the notice. But, it will not apply to any payment we make or other action we take before we receive the notice. If you change the beneficiary, any previous arrangement you made as to a payment option for benefits is cancelled. You may choose a payment option for the new beneficiary in accordance with "How Benefits Are Paid" on Page 15.

**Assignment.** You may assign this policy, if we agree. In any event, we will not be bound by an assignment unless we have received it in writing at our Administrative Office. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of an assignment. An absolute assignment will be considered as a change of ownership to the assignee.

---

# *The Insurance Benefit We Pay*

We will pay the Insurance Benefit of this policy to the beneficiary when we receive at our Administrative Office (1) proof satisfactory to us that the insured person died before the Final Policy Date; and (2) all other requirements we deem necessary before such payment may be made. The Insurance Benefit includes the following amounts, which we will determine as of the date of the insured person's death:

- the death benefit described on Page 6;

- **plus** any other benefits then due from riders to this policy;

- **minus** any policy loan and accrued loan interest;

- **minus** any overdue deductions from your Policy Account if the insured person dies during a grace period.

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 15, or (b) the rate required by any applicable law. Payment of the Insurance Benefit may also be affected by other provisions of this policy. See Page 16, where we specify our right to contest the policy, the suicide exclusion, and what happens if age or sex has been misstated. Special exclusions or limitations (if any) are listed in the Policy Information section.

**Death Benefit.** The death benefit at any time will be determined under either Option A or Option B-PLUS below, whichever you have chosen and is in effect at such time.

Under Option A, the death benefit is the greater of (a) the Face Amount of Insurance; or (b) a percentage (see Table 1 below) of the amount in your Policy Account. Under this option, the amount of the death benefit is fixed, except when it is determined by such a percentage.

The percentage referred to above is the percentage from the following table for the insured person's age (nearest birthday) at the beginning of the policy year of determination.

### TABLE 1: OPTION A
### PERCENTAGES

*For ages not shown, the percentages shall
decrease by a ratable portion for each full year*

| Insured Person's Age | Percentage | Insured Person's Age | Percentage |
|---|---|---|---|
| 40 and under | 250% | 65 | 120% |
| 45 | 215 | 70 | 115 |
| 50 | 185 | 75 thru 95 | 105 |
| 55 | 150 | 100 | 100 |
| 60 | 130 | | |

Under Option B-PLUS, the death benefit is the greater of (a) the Face Amount of Insurance *plus* the amount in your Policy Account; or (b) a percentage (see Table 2 below) of the amount in your Policy Account. Under this option the amount of the death benefit is variable.

The percentage referred to above is the percentage from the following table for the insured person's age (nearest birthday) at the beginning of the policy year of determination.

### TABLE 2: OPTION B-PLUS
### PERCENTAGES

*For ages not shown, the percentages shall
decrease by a ratable portion for each full year*

| Insured Person's Age | Percentage | Insured Person's Age | Percentage |
|---|---|---|---|
| 40 and under | 250% | 65 | 120% |
| 45 | 215 | 70 thru 85 | 115 |
| 50 | 185 | 90 | 110 |
| 55 | 150 | 95 | 105 |
| 60 | 130 | 100 | 100 |

Section 7702 of the Internal Revenue Code of 1986, as amended (i.e., the "Code"), gives a definition of life insurance which limits the amounts that may be paid into a life insurance policy relative to the benefits it provides. Even if this policy states otherwise, at no time will the "future benefits" under this policy be less than an amount such that the "premiums paid" do not exceed the Code's "guideline premium limitations". We may adjust the amount of premium paid to meet these limitations. Also, at no time will the "death benefit" under the policy be less than the "applicable percentage" of the "cash surrender value" of the policy. The above terms are as defined in the Code. In addition, we may take certain actions, described here and elsewhere in the policy, to meet the definitions and limitations in the Code, based on our interpretation of the Code. Please see "Policy Changes — Applicable Tax Law" for more information.

# Changing the Face Amount of Insurance or the Death Benefit Option

At any time after the first policy year while this policy is in force, you may change the death benefit option or the Face Amount of Insurance by written request to us at our Administrative Office, subject to our approval and the following:

1. You may ask us to increase the Face Amount of Insurance if you provide evidence satisfactory to us of the insurability of the insured person. If the Face Amount of Insurance is increased, then the cost of insurance rate for the amount of the increase will be based on the rating class of the insured person on the date of the increase, and the insured person's sex and attained age. Any increase you ask for must be at least $10,000. There is a charge for such increase that is shown in the Policy Information section. We will deduct the charge from your Policy Account as of the date the increase takes effect. Such deduction will be made in accordance with the "Allocations" provision on Page 9. If you increase the face amount, an additional fifteen year surrender charge may apply to that increase if any or all of that increase is surrendered before the end of the fifteenth year from the effective date of increase.

2. You may ask us to reduce the Face Amount of Insurance but not to less than the minimum amount for which we would then issue this policy under our rules. Any such reduction in the Face Amount of Insurance may not be less than $10,000. If you do this before the end of the fifteenth policy year or before the end of the fifteenth year following an increase in the face amount, we may deduct from your Policy Account a pro rata share of the applicable surrender charge (see Page 12). Reductions will first be applied against the most recent increase in the Face Amount of Insurance. They will then be applied to prior increases in the Face Amount of Insurance in the reverse order in which such increases took place, and then to the original Face Amount of Insurance.

3. You can change your death benefit option. If you ask us to change from Option A to Option B-PLUS, we will decrease the Face Amount of Insurance by the amount in your Policy Account on the date the change takes effect. However, we reserve the right to decline to make such change if it would reduce the Face Amount of Insurance below the minimum amount for which we would then issue this policy under our rules. If you ask us to change from Option B-PLUS to Option A, we will increase the Face Amount of Insurance by the amount in your Policy Account on the date the change takes effect. Such decreases and increases in the Face Amount of Insurance are made so that the death benefit remains the same on the date the change takes effect. However, if your death benefit is determined by a percentage multiple of the Policy Account, there may be an increase in the death benefit. If so, we will require evidence of insurability to make the change.

4. The change will take effect at the beginning of the policy month that coincides with or next follows the date we approve your request.

5. We reserve the right to decline to make any change that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 16).

6. You may ask for a change by completing an application for change, which you can get from our agent or by writing to us at our Administrative Office. A copy of your application for change will be attached to the new Policy Information section that we will issue when the change is made. The new section and the application for change will become a part of this policy. We may require you to return this policy to our Administrative Office to make a policy change.

# The Premiums You Pay

The initial premium payment shown in the Policy Information section is due on or before delivery of this policy. No insurance will take effect before the initial premium payment is paid. Other premiums may be paid at any time while this policy is in force and before the Final Policy Date at our Administrative Office or premium collection office.

We will send premium notices to you for the planned periodic premium shown in the Policy Information section. You may skip planned periodic premium payments. However, this may adversely affect the duration of the death benefit and your policy's values.

90-300-7

**Limits.** Each premium payment after the initial one must be at least $100. We may increase this minimum limit 90 days after we send you written notice of such increase. We reserve the right to limit the amount of any premium payments you may make which are in addition to the planned periodic premium payments.

We also reserve the right not to accept premium payments (in a policy year) that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 16).

**Grace Period.** The duration of insurance coverage depends upon the Net Cash Surrender Value being sufficient to cover the total monthly deductions described on Page 9. If the Net Cash Surrender Value at the beginning of any policy month is less than such deductions for that month, we will send a written notice to you and any assignee on our records at last known addresses stating that a grace period of 61 days has begun, starting with the beginning of that policy month. The notice will also state the amount of payment which would increase the Net Cash Surrender Value sufficiently to cover total monthly deductions for 3 months, if no interest or investment performance were credited to or charged against the Policy Account and no policy changes were made.

If we do not receive such amount at our Administrative Office before the end of the grace period, we will then (1) withdraw and retain the entire amount in your Policy Account, including any applicable surrender charge; and (2) send a written notice to you and any assignee on our records at last known addresses stating that this policy has ended without value.

If we do receive the requested amount before the end of the grace period, but the Net Cash Surrender Value is still insufficient to cover total monthly deductions, we will send a written notice that a new 61-day grace period has begun and request an additional payment.

If the insured person dies during a grace period, we will pay the Insurance Benefit as described on Page 5.

**Restoring Your Policy Benefits.** If this policy has ended without value, you may restore policy benefits while the insured person is alive if you:

1.  Ask for restoration of policy benefits within 6 months from the end of the grace period; and

2.  Provide evidence of insurability satisfactory to us; and

3.  Make a payment of an amount sufficient to cover (i) the monthly administrative charges from the beginning of the grace period to the effective date of restoration; (ii) total monthly deductions for 3 months, calculated from the effective date of restoration; and (iii) the charge for applicable taxes, the premium charge, and any increase in surrender charges associated with this payment. We will determine the amount of this required payment as if no interest or investment performance were credited to or charged against your Policy Account.

The effective date of the restoration of policy benefits will be the beginning of the policy month which coincides with or next follows the date we approve your request.

From the required payment we will deduct the charge for applicable taxes and the premium charge. The policy account on the date of restoration will be equal to the balance of the required payment plus a surrender charge credit. The surrender charge credit will be the surrender charge applicable at the beginning of the grace period, but not greater than the maximum surrender charge as of the effective date of restoration.

We will start to make monthly charges again as of the effective date of restoration. The monthly administrative charges from the beginning of the grace period to the effective date of restoration will be deducted from the policy account as of the effective date of restoration.

# *Your Policy Account and How it Works*

**Premium Payments.** When we receive your premium payments, we subtract the expense charges shown in the table in the Policy Information section. We put the balance (the net premium) into your Policy Account as of the date we receive the premium payment at our Administrative Office, and before any deductions from your Policy Account due on that date are made. However, we will put the initial net premium payment into your Policy Account as of the Register Date if it is later than the date of receipt. No premiums will be applied to your Policy Account until the full initial premium payment, as shown on your application, is received at our Administrative Office.

**Monthly Deductions.** At the beginning of each policy month we make a deduction from your Policy Account to cover monthly administrative charges and to provide insurance coverage, subject to the Grace Period provision above. Such deduction for any policy month is the sum of the following amounts determined as of the beginning of that month:

- the monthly administrative charges;
- the monthly cost of insurance for the insured person;
- the monthly cost of any benefits provided by riders to this policy.

The monthly cost of insurance is the sum of a) our current monthly cost of insurance rate times the net amount at risk at the beginning of the policy month divided by $1,000; *plus* b) any extra charge per $1,000 of Face Amount of Insurance shown in the Policy Information section, times the Face Amount of Insurance at the beginning of the policy month divided by $1,000. The net amount at risk at any time is the death benefit minus the amount in your Policy Account at that time. The cost of insurance rate is based on the face amount of insurance and on the sex, attained age, rating class, and smoker or non-smoker status of the insured person.

We will determine cost of insurance rates from time to time. Any change in the cost of insurance rates we use will be as described in "Changes in Policy Cost Factors" on Page 16. They will never be more than those shown in the Table of Guaranteed Maximum Cost of Insurance Rates on Page 4.

**Other Deductions.** We also make the following other deductions from your Policy Account as they occur:

- We deduct a withdrawal charge if you make a partial withdrawal of the Net Cash Surrender Value (see Page 12).
- We deduct a surrender charge if, before the end of the fifteenth policy year, you give up this policy for its Net Cash Surrender Value, you reduce the Face Amount of Insurance, or if this policy terminates without value at the end of a grace period (see Page 12). A surrender charge may also apply to such transactions for up to fifteen years following a face amount increase.
- We deduct a charge if you increase the Face Amount of Insurance (see Page 7).
- We deduct a charge for certain transfers (see Page 10).

# *Your Investment Options*

**Allocations.** This policy provides investment options for the amount in your Policy Account. Amounts put into your Policy Account and deductions from it are allocated to the investment divisions of our SA and to the unloaned portion of our GID at your direction. You specified your initial premium allocation and deduction allocation percentages in your application for this policy, a copy of which is attached to this policy. Unless you change them, such percentages shall also apply to subsequent premium and deduction allocations. However, any amounts which are put into your Policy Account prior to the Allocation Date and which are to be allocated to the investment divisions of our SA will initially be allocated to (and monthly deductions taken from) the Money Market Division of our SA. The Allocation Date is the first business day (see Page 11) twenty calendar days after the date of issue of this policy. On the Allocation Date, any such amounts then in the Money Market Division will be allocated in accordance with the directions contained in your policy application.

**Allocation** percentages must be zero or a whole number not greater than 100. The sum of the premium allocation percentages and of the deduction allocation percentages must each equal 100.

90-300-9

You may change such allocation percentages by written notice to our Administrative Office. A change will take effect on the date we receive it at our Administrative Office except for changes received on or prior to the Allocation Date which will take effect on the first business day following the Allocation Date.

If we cannot make a monthly deduction on the basis of the deduction allocation percentages then in effect, we will make that deduction based on the proportion that your unloaned value in our GID and your values in the investment divisions of our SA bear to the total unloaned value in your Policy Account.

**Transfers.** At your written request to our Administrative Office, we will transfer amounts from your value in any investment division of our SA to one or more other divisions of our SA or to our GID. Any such transfer will take effect on the date we receive your written request for it at our Administrative Office.

Once during each policy year you may ask us by written request to our Administrative Office to transfer an amount you specify from your unloaned value in our GID to one or more investment divisions of our SA. However, we will make such a transfer only if (1) we receive your written request at our Administrative Office within 30 days before or after a policy anniversary; and (2) the amount you specify is not more than the greater of 25% of your unloaned value in our GID as of the date the transfer takes effect or the minimum transfer amount shown on Page 3. In no event will we transfer more than your unloaned value in our GID. The transfer will take effect on the date we receive your written request for it at our Administrative Office but not before the policy anniversary.

The minimum amount that we will transfer from your value in an investment division of our SA on any date is the lesser of the minimum transfer amount shown on Page 3 or your value in that investment division on that date, except as stated in the next paragraph. The minimum amount that we will transfer from your value in our GID is the lesser of the minimum transfer amount shown on Page 3 or your unloaned value in our GID as of the date the transfer takes effect, except as stated in the next paragraph.

We will waive the minimum amount limitations set forth in the immediately preceding paragraph if the *total* amount being transferred on that date is at least the minimum transfer amount shown on Page 3.

We reserve the right to make a transfer charge up to the amount shown on Page 3. The transfer charge, if any, is deducted from the amounts transferred from the investment divisions of our SA and the GID based on the proportion that the amount transferred from each investment division and the GID bears to the total amount being transferred. A transfer from the Money Market Division on the Allocation Date (if applicable) will not incur a transfer charge.

If you ask us to transfer the entire amount of your value in the investment divisions of our SA to our GID, we will not make a charge for that transfer.

# *The Value of Your Policy Account*

The amount in your Policy Account at any time is equal to the sum of the amounts you then have in our GID and the investment divisions of our SA under this policy.

**Your Value in our Guaranteed Interest Division (GID).** The amount you have in our GID at any time is equal to the amounts allocated and transferred to it, plus the interest credited to it, minus amounts deducted, transferred and withdrawn from it.

We will credit the amount in our GID with interest rates we determine. We will determine such interest rates annually in advance for unloaned and loaned amounts in our GID. The rates may be different for unloaned and loaned amounts. The interest rates we determine each year will apply to the policy year that follows the date of determination. Any change in the interest rates we determine will be as described in "Changes in Policy Cost Factors" on Page 16. Such interest rates will not be less than 4%.

90-300-9                                                                                           Page 10

At the end of each policy month we will credit interest on unloaned amounts in our GID as follows:

- On amounts that remain in our GID for the entire policy month, from the beginning to the end of the policy month.

- On amounts allocated to our GID during a policy month that are net premium payments or loan repayments, from the date we receive them to the end of the policy month. However, we will credit interest on the amount derived from the initial premium payment from the Register Date, if it is later than the date of receipt.

- On amounts transferred to our GID during a policy month, from the date of the transfer to the end of the policy month.

- On amounts deducted or withdrawn from our GID during a policy month, from the beginning of the policy month to the date of the deduction or withdrawal.

We credit interest on the loaned portion of our GID on each policy anniversary and at any time you repay all of a policy loan. At the time of crediting such interest, we allocate the interest to the investment divisions and the unloaned portion of our GID in accordance with your premium allocation percentage.

**Your Value in the Investment Divisions of our Separate Account (SA).** The amount you have in an investment division of our SA under this policy at any time is equal to the number of units this policy then has in that division multiplied by the division's unit value at that time.

Amounts allocated, transferred or added to an investment division of our SA are used to purchase units of that division; units are redeemed when amounts are deducted, loaned, transferred or withdrawn. These transactions are called policy transactions.

The number of units a policy has in an investment division at any time is equal to the number of units purchased minus the number of units redeemed in that division to that time. The number of units purchased or redeemed in a policy transaction is equal to the dollar amount of the policy transaction divided by the division's unit value on the date of the policy transaction. Policy transactions may be made on any day. The unit value that applies to a transaction made on a business day will be the unit value for that day. The unit value that applies to a transaction made on a non-business day will be the unit value for the next business day.

We determine unit values for the investment divisions of our SA at the end of each business day. Generally, a business day is any day we are open and the New York Stock Exchange is open for trading. A business day immediately preceded by one or more non-business calendar days will include those non-business days as part of that business day. For example, a business day which falls on a Monday will consist of that Monday and the immediately preceding Saturday and Sunday.

The unit value of an investment division of our SA on any business day is equal to the unit value for that division on the immediately preceding business day multiplied by the net investment factor for that division on that business day.

The net investment factor for an investment division of our SA on any business day is (a) divided by (b), minus (c), where:

(a) is the net asset value of the shares in designated investment companies that belong to the investment division at the close of business on such business day before any policy transactions are made on that day, plus the amount of any dividend or capital gain distribution paid by the investment companies on that day;

(b) is the value of the assets in that investment division at the close of business on the immediately preceding business day after all policy transactions were made for that day; and

(c) is a charge for each calendar day in that business day, as defined above, corresponding to a charge not exceeding .70% yearly for mortality and expense risks, plus any charge for that day for taxes or amounts set aside as a reserve for taxes.

The net asset value of an investment company's shares held in each investment division shall be the value reported to us by that investment company.

# *The Cash Surrender Value of this Policy*

**Cash Surrender Value.** The Cash Surrender Value on any date is equal to the amount in your Policy Account on that date minus any surrender charge.

**Net Cash Surrender Value.** The Net Cash Surrender Value is equal to the Cash Surrender Value minus any policy loan and accrued loan interest. You may give up this policy for its Net Cash Surrender Value at any time while the insured person is living. You may do this by sending us a written request for it and this policy to our Administrative Office. We will compute the Net Cash Surrender Value as of the date we receive your request for it and this policy at our Administrative Office. All insurance coverage under this policy ends on such date.

**Surrender Charges.** If you give up this policy for its Net Cash Surrender Value or if it ends without value at the end of a grace period before the end of the fifteenth policy year, we will subtract a surrender charge from your Policy Account. A table of maximum surrender charges is in the Policy Information section.

We will also establish surrender charges for any increase in the Face Amount of Insurance that represents an increase over the previous highest Face Amount. These will apply before the end of the fifteenth year from the effective date of the increase. Changes in Face Amount resulting from a change in death benefit option will not be considered in computing the previous highest Face Amount.

If the Face Amount of Insurance is reduced before the end of the fifteenth policy year or within fifteen years following a face amount increase, we may also deduct a proportionate amount of any applicable surrender charge from your Policy Account. Such deduction will be made in accordance with the "Allocations" provision on Page 9. Reductions will first be applied against the most recent increase in the Face Amount of Insurance. They will then be applied to prior increases in the Face Amount of Insurance in the reverse order in which such increases took place, and then to the original Face Amount of Insurance.

If there is an increase or reduction in the surrender charge shown on Page 3, we will send you a new table showing the revised surrender charges. We have filed a detailed statement of the method of computing surrender charges with the insurance supervisory official of the jurisdiction in which this policy is delivered.

**Partial Net Cash Surrender Value Withdrawal.** After the first policy year and while the insured person is living, you may ask for a partial Net Cash Surrender Value withdrawal by written request to our Administrative Office. Your request will be subject to our approval based on our rules in effect when we receive your request, and to the minimum withdrawal amount shown in the Policy Information section. The amount withdrawn from the Policy Account is equal to the amount requested plus the expense charge shown in the Table of Expense Charges in the Policy Information section. We have the right to decline a request for a partial Net Cash Surrender Value withdrawal. A partial withdrawal will result in a reduction in the Cash Surrender Value and in your Policy Account eq a' to the amount withdrawn as well as a reduction in your death benefit. If the death benefit is Option A, the withdrawal may also result in a decrease in the face amount.

You may tell us how much of each partial withdrawal is to come from your unloaned value in our GID and from your values in each of the investment divisions of our SA. If you do not tell us, we will make the withdrawal on the basis of your monthly deduction allocation percentages then in effect. The expense charge is deducted from your value remaining in each investment division and the GID, from whichever the withdrawal is made, based on the proportion that the amount withdrawn from each investment division and the GID bears to the total amount being withdrawn. If we cannot make the withdrawal or deduct the expense charge as indicated above, we will make the withdrawal and deduction based on the proportion that your unloaned value in our GID and your values in the investment divisions of our SA bear to the total unloaned value in your Policy Account.

Such withdrawal and resulting reduction in the death benefit, in the Cash Surrender Value and in your Policy Account will take effect on the date we receive your written request for it at our Administrative Office. We will send you a new Policy Information section if a withdrawal results in a reduction in the Face Amount of Insurance. It will become a part of this policy. We may require you to return this policy to our Administrative Office to make a change.

# *How a Loan Can Be Made*

**Policy Loans.** You can get a loan on this policy while it has a loan value. This policy will be the only security for the loan. The initial loan and each additional loan must be for at least the minimum loan amount shown in the Policy Information section. Any amount on loan is part of your Policy Account (see Page 10). We refer to this as the loaned portion of your Policy Account.

**Loan Value.** The loan value on any date is 90% of the Cash Surrender Value on that date.

The amount of the loan may not be more than the loan value. If you request an increase to an existing loan, the additional amount requested will be added to the amount of the existing loan and accrued loan interest.

Your request for a policy loan must be in writing to our Administrative Office. You may tell us how much of the requested loan is to be allocated to your unloaned value in our GID and your value in each investment division of our SA. Such values will be determined as of the date we receive your request. If you do not tell us, we will allocate the loan on the basis of your monthly deduction allocation percentages then in effect. If we cannot allocate the loan on the basis of your direction or those percentages, we will allocate it based on the proportion that your unloaned value in our GID and your values in the investment divisions of our SA bear to the total unloaned value in your Policy Account.

The loaned portion of your Policy Account will be maintained as a part of our GID. Thus, when a loaned amount is allocated to an investment division of our SA, we will redeem units of that investment division sufficient in value to cover the amount of the loan so allocated and transfer that amount to our GID.

**Loan Interest.** Interest on a loan accrues daily at an adjustable loan interest rate. We will determine the rate at the beginning of each policy year, subject to the following paragraphs. It will apply to any new or outstanding loan under the policy during the policy year next following the date of determination.

The maximum loan interest rate for a policy year shall be the greater of: (1) the "Published Monthly Average," as defined below, for the calendar month that ends two months before the date of determination; or (2) 5%. "Published Monthly Average" means the Monthly Average Corporates yield shown in Moody's Corporate Bond Yield Averages published by Moody's Investors Service, Inc., or any successor thereto. If such averages are no longer published, we will use such other averages as may be established by regulation by the insurance supervisory official of the jurisdiction in which this policy is delivered. In no event will the loan interest rate for a policy year be greater than the maximum rate permitted by applicable law. We reserve the right to establish a rate lower than the maximum.

No change in the rate shall be less than $\frac{1}{2}$ of 1% a year. We may increase the rate whenever the maximum rate as determined by clause (1) of the preceding paragraph increases by $\frac{1}{2}$ of 1% or more. We will reduce the rate to or below the maximum rate as determined by clause (1) of the preceding paragraph if such maximum is lower than the rate being charged by $\frac{1}{2}$ of 1% or more.

We will notify you of the initial loan interest rate when you make a loan. We will also give you advance written notice of any increase in the interest rate of any outstanding loan.

Loan interest is due on each policy anniversary. If the interest is not paid when due, it will be added to your outstanding loan and allocated on the basis of the deduction allocation percentages then in effect. If we cannot make the allocation on the basis of these percentages, we will make it based on the proportion that your unloaned value in our GID and your values in the investment divisions of our SA bear to the total unloaned value in your Policy Account. The unpaid interest will then be treated as part of the loaned amount and will bear interest at the loan rate.

When unpaid loan interest is allocated to an investment division of our SA, we will redeem units of that investment division sufficient in value to cover the amount of the interest so allocated and transfer that amount to our GID.

**Loan Repayment.** You may repay all or part of a policy loan at any time while the insured person is alive and this policy is in force. We will assume that any payment you make to us while you have a loan and your policy is not in grace is a loan repayment, unless you tell us in writing that it is a premium payment.

Repayments will first be allocated to our GID until you have repaid any loaned amounts that were allocated to our GID. You may tell us how to allocate payments above that amount among our GID and the investment divisions of our SA. If you do not tell us, we will make the allocation on the basis of the premium allocation percentages then in effect.

Failure to repay a policy loan or to pay loan interest will not terminate this policy unless at the beginning of a policy month the Net Cash Surrender Value is less than the total monthly deduction then due. In that case, the Grace Period provision will apply (see Page 8).

A policy loan will have a permanent effect on your benefits under this policy even if it is repaid.

## *Our Separate Account (SA)*

The Separate Account is our Separate Account (SA) shown on Page 3. We established it and we maintain it under the laws of New York State. Realized and unrealized gains and losses from the assets of our SA are credited or charged against it without regard to our other income, gains, or losses. Assets are put in our SA to support this policy and other variable life insurance policies. Assets may be put in our SA for other purposes, but not to support contracts or policies other than variable contracts.

The assets of our SA are our property. The portion of its assets equal to the reserves and other policy liabilities with respect to our SA will not be chargeable with liabilities arising out of any other business we conduct. We may transfer assets of an investment division in excess of the reserves and other liabilities with respect to that division to another investment division or to our General Account.

**Investment Divisions.** Our SA consists of investment divisions. Each division may invest its assets in a separate class of shares of a designated investment company or companies. The investment divisions of our SA that you chose for your initial allocations are shown on the application for this policy, a copy of which is attached to this policy. We may from time to time make other investment divisions available to you. We will provide you with written notice of all material details including investment objectives and all charges.

We have the right to change or add designated investment companies. We have the right to add or remove investment divisions. We have the right to withdraw assets of a class of policies to which this policy belongs from an investment division and put them in another investment division. We also have the right to combine any two or more investment divisions. The term investment division in this policy shall then refer to any other investment division in which the assets of a class of policies to which this policy belongs were placed.

We have the right to:

1. register or deregister the Separate Account under the Investment Company Act of 1940;

2. run the Separate Account under the direction of a committee, and discharge such committee at any time;

3. restrict or eliminate any voting rights of policy owners, or other persons who have voting rights as to the Separate Account; and

4. operate the Separate Account or one or more of the investment divisions by making direct investments or in any other form. If we do so, we may invest the assets of the Separate Account or one or more of the investment divisions in any legal investments. We will rely upon our own or outside counsel for advice in this regard. Also, unless otherwise required by law or regulation, an investment adviser or any investment policy may not be changed without our consent. If required by law or regulation, the investment policy of an investment division of our SA will not be changed by us unless approved by the Superintendent of Insurance of New York State or deemed approved in accordance with such law or regulation. If so required, the process for getting such approval is on file with the insurance supervisory official of the jurisdiction in which this policy is delivered.

If any of these changes result in a material change in the underlying investments of an investment division of our SA, we will notify you of such change, as required by law. If you have value in that investment division, if you wish, we will transfer it at your written direction from that division (without charge) to another division of our SA or to our GID, and you may then change your premium and deduction allocation percentages.

## Our Annual Report to You

For each policy year we will send you a report for this policy that shows the current death benefit, the value you have in our GID and the value you have in each investment division of our SA, the Cash Surrender Value and any policy loan with the current loan interest rate. It will also show the premiums paid and any other information as may be required by the insurance supervisory official of the jurisdiction in which this policy is delivered.

## How Benefits Are Paid

You can have the Insurance Benefit, your Net Cash Surrender Value withdrawals or your Policy Account payable on the Final Policy Date paid immediately in one sum. Or, you can choose another form of payment for all or part of them. If you do not arrange for a specific choice before the insured person dies, the beneficiary will have this right when the insured person dies. If you do make an arrangement, however, the beneficiary cannot change it after the insured person dies.

*Payments under the following options will not be affected by the investment experience of any investment division of our SA after proceeds are applied under such options.*

The options are:

1. **Deposit:** The sum will be left on deposit for a period mutually agreed upon. We will pay interest at the end of every month, every 3 months, every 6 months or every 12 months, as chosen.

2. **Installment Payments:** There are two ways that we pay installments:

    A. FIXED PERIOD: We will pay the sum in equal installments for a specified number of years (not more than 30). The installments will be at least those shown in the Table of Guaranteed Payments on Page 18.

    B. FIXED AMOUNT: We will pay the sum in installments as mutually agreed upon until the original sum, together with interest on the unpaid balance, is used up.

3. **Monthly Life Income:** We will pay the sum as a monthly income for life. The amount of the monthly payment will be at least that shown in the Table of Guaranteed Payments on Page 18. You may choose any one of three ways to receive monthly life income. We will guarantee payments for at least 10 years (called "10 Years Certain"); at least 20 years (called "20 Years Certain"); or until the payments we make equal the original sum (called "Refund Certain").

4. **Other:** We will apply the sum under any other option requested that we make available at the time of the insured person's death or Net Cash Surrender Value withdrawal, or on the Final Policy Date, whichever applies.

We guarantee interest under the Deposit Option at the rate of 3% a year and under either Installment Option at $3\frac{1}{2}$% a year. We may raise these guaranteed rates. We may also allow interest under the Deposit Option and under either Installment Option at a rate above the guaranteed rate.

The payee may name and change a successor payee for any amount we would otherwise pay to the payee's estate.

Any arrangements involving more than one of the options, or a payee who is not a natural person (for example, a corporation) or who is a fiduciary, must have our approval. Also, details of all arrangements will be subject to our rules at the time the arrangement takes effect. These include rules on: the minimum amount we will apply under an option and minimum amounts for installment payments; withdrawal or commutation rights; naming payees and successor payees; and proving age and survival.

Payment choices (or any later changes) will be made and will take effect in the same way as a change of beneficiary. Amounts applied under these options will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

## *Other Important Information*

**Your Contract with Us.** This policy is issued in consideration of payment of the initial premium payment shown in the Policy Information section.

This policy, and the attached copy of the initial application and all subsequent applications to change this policy, and all additional Policy Information sections added to this policy, make up the entire contract. The rights conferred by this policy are in addition to those provided by applicable Federal and State laws and regulations.

Only our Chairman of the Board, our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

**Policy Changes — Applicable Tax Law.** For you and the beneficiary to receive the tax treatment accorded to life insurance under Federal law, this policy must qualify initially and continue to qualify as life insurance under the Internal Revenue Code or successor law. Therefore, to assure this qualification for you we have reserved earlier in this policy the right to decline to accept premium payments, to decline to change death benefit options, to decline to change the Face Amount of Insurance, or to decline to make partial withdrawals that would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us. Further, we reserve the right to make changes in this policy or its riders (for example, in the percentages on Page 6) or to require additional premium payments or to make distributions from this policy to the extent we deem it necessary to continue to qualify this policy as life insurance. Any such changes will apply uniformly to all policies that are affected. You will be given advance written notice of such changes.

**Changes in Policy Cost Factors.** Changes in policy cost factors (interest rates we credit, cost of insurance deductions, and expense charges) will be by class and based upon changes in future expectations for such elements as: investment earnings, mortality, persistency, expenses and taxes. Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

**When the Policy is Incontestable.** We have the right to contest the validity of this policy based on material misstatements made in the initial application for this policy. We also have the right to contest the validity of any policy change or restoration based on material misstatements made in any application for that change. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the insured person for two years from the date of issue shown in the Policy Information section. We will not contest any policy change that requires evidence of insurability, or any restoration of this policy, after the change or restoration has been in effect for two years during the insured person's lifetime.

No statement shall be used to contest a claim unless contained in an application.

All statements made in an application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

**What if Age or Sex has Been Misstated?** If the insured person's age or sex has been misstated on any application, the death benefit and any benefits provided by riders to this policy shall be those which would be purchased by the most recent deduction for the cost of insurance, and the cost of any benefits provided by riders, at the correct age and sex.

**How the Suicide Exclusion Affects Benefits.** If the insured person commits suicide (while sane or insane) within two years after the Date of Issue shown in the Policy Information section, our liability will be limited to the payment of a single sum. This sum will be equal to the premiums paid, minus any loan and accrued loan interest and minus any partial withdrawal of the Net Cash Surrender Value. If the insured person commits suicide (while sane or insane) within two years after the effective date of a change that you asked for that increases the death benefit, then our liability as to the increase in amount will be limited to the payment of a single sum equal to the monthly cost of insurance deductions made for such increase plus the expense charge deducted for the increase (see Page 7)!

**How We Measure Policy Periods and Anniversaries.** We measure policy years, policy months, and policy anniversaries from the Register Date shown in the Policy Information section. Each policy month begins on the same day in each calendar month as the day of the month in the Register Date.

**How, When and What We May Defer.** We may not be able to obtain the value of the assets of the investment divisions of our SA if: (1) the New York Stock Exchange is closed; or (2) the Securities and Exchange Commission requires trading to be restricted or declares an emergency. During such times, as to amounts allocated to the investment divisions of our SA, we may defer:

1. Determination and payment of Net Cash Surrender Value withdrawals;

2. Determination and payment of any death benefit in excess of the Face Amount of Insurance;

3. Payment of loans;

4. Determination of the unit values of the investment divisions of our SA; and

5. Any requested transfer or the transfer on the Allocation Date.

As to amounts allocated to our GID, we may defer payment of any Net Cash Surrender Value withdrawal or loan amount for up to six months after we receive a request for it. We will allow interest, at a rate of at least 3% a year, on any Net Cash Surrender Value payment derived from our GID that we defer for 30 days or more.

**The Basis We Use for Computation.** We provide Cash Surrender Values that are at least equal to those required by law. If required to do so, we have filed with the insurance supervisory official of the jurisdiction in which this policy is delivered a detailed statement of our method of computing such values. We compute reserves under this policy by the Commissioners Reserve Valuation Method.

We base minimum cash surrender values and reserves on the Commissioners 1980 Standard Ordinary Male and Female, Smoker and Non-Smoker, Mortality Tables. We also use these tables as the basis for determining maximum insurance costs, taking account of sex, attained age, rating class and Smoker or Non-Smoker status of the insured person. We use an effective annual interest rate of 4%.

**Policy Illustrations.** Upon request we will give you an illustration of the future benefits under this policy based upon both guaranteed and current cost factor assumptions. However, if you ask us to do this more than once in any policy year, we reserve the right to charge you a fee for this service.

**Policy Changes.** You may add additional benefit riders or make other changes, subject to our rules at the time of change.

90-300-17

# *Table of Guaranteed Payments*
## (MINIMUM AMOUNT FOR EACH $1,000 APPLIED)

### Option 2A
## FIXED PERIOD INSTALLMENTS

| Number of Years' Installments | Monthly Installment | Annual Installment |
|---|---|---|
| 1 | $84.70 | $1,000.00 |
| 2 | 43.08 | 508.60 |
| 3 | 29.21 | 344.86 |
| 4 | 22.28 | 263.04 |
| 5 | 18.12 | 213.99 |
| 6 | 15.36 | 181.32 |
| 7 | 13.38 | 158.01 |
| 8 | 11.91 | 140.56 |
| 9 | 10.76 | 127.00 |
| 10 | 9.84 | 116.18 |
| 11 | 9.09 | 107.34 |
| 12 | 8.47 | 99.98 |
| 13 | 7.94 | 93.78 |
| 14 | 7.49 | 88.47 |
| 15 | 7.11 | 83.89 |
| 16 | 6.77 | 79.89 |
| 17 | 6.47 | 76.37 |
| 18 | 6.20 | 73.25 |
| 19 | 5.97 | 70.47 |
| 20 | 5.76 | 67.98 |
| 21 | 5.57 | 65.74 |
| 22 | 5.40 | 63.70 |
| 23 | 5.24 | 61.85 |
| 24 | 5.10 | 60.17 |
| 25 | 4.97 | 58.62 |
| 26 | 4.84 | 57.20 |
| 27 | 4.73 | 55.90 |
| 28 | 4.63 | 54.69 |
| 29 | 4.54 | 53.57 |
| 30 | 4.45 | 52.53 |

nstallments are paid every 3 months, they l be 25.32% of the annual installments. If y are paid every 6 months, they will be 43% of the annual installments.

### Option 3
## MONTHLY LIFE INCOME

| AGE | 10 Years Certain Male | 10 Years Certain Female | 20 Years Certain Male | 20 Years Certain Female | Refund Certain Male | Refund Certain Female |
|---|---|---|---|---|---|---|
| 50 | $4.50 | $3.96 | $4.27 | $3.89 | $4.28 | $3.87 |
| 51 | 4.58 | 4.02 | 4.32 | 3.94 | 4.35 | 3.93 |
| 52 | 4.67 | 4.09 | 4.38 | 4.00 | 4.42 | 3.99 |
| 53 | 4.75 | 4.16 | 4.44 | 4.06 | 4.50 | 4.05 |
| 54 | 4.85 | 4.24 | 4.50 | 4.12 | 4.58 | 4.11 |
| 55 | 4.94 | 4.32 | 4.56 | 4.18 | 4.66 | 4.18 |
| 56 | 5.04 | 4.40 | 4.62 | 4.24 | 4.74 | 4.25 |
| 57 | 5.15 | 4.49 | 4.68 | 4.31 | 4.83 | 4.33 |
| 58 | 5.26 | 4.58 | 4.74 | 4.38 | 4.93 | 4.41 |
| 59 | 5.37 | 4.68 | 4.81 | 4.45 | 5.03 | 4.49 |
| 60 | 5.49 | 4.78 | 4.86 | 4.52 | 5.13 | 4.58 |
| 61 | 5.62 | 4.89 | 4.92 | 4.59 | 5.24 | 4.67 |
| 62 | 5.75 | 5.00 | 4.98 | 4.66 | 5.35 | 4.77 |
| 63 | 5.88 | 5.12 | 5.04 | 4.73 | 5.48 | 4.88 |
| 64 | 6.03 | 5.25 | 5.09 | 4.80 | 5.60 | 4.99 |
| 65 | 6.17 | 5.39 | 5.14 | 4.88 | 5.74 | 5.10 |
| 66 | 6.32 | 5.53 | 5.19 | 4.95 | 5.88 | 5.22 |
| 67 | 6.48 | 5.68 | 5.24 | 5.01 | 6.03 | 5.35 |
| 68 | 6.64 | 5.83 | 5.28 | 5.08 | 6.18 | 5.49 |
| 69 | 6.80 | 6.00 | 5.32 | 5.14 | 6.35 | 5.64 |
| 70 | 6.97 | 6.17 | 5.35 | 5.20 | 6.53 | 5.79 |
| 71 | 7.15 | 6.34 | 5.38 | 5.26 | 6.71 | 5.96 |
| 72 | 7.32 | 6.53 | 5.41 | 5.30 | 6.91 | 6.13 |
| 73 | 7.50 | 6.72 | 5.43 | 5.35 | 7.12 | 6.32 |
| 74 | 7.67 | 6.92 | 5.45 | 5.38 | 7.34 | 6.52 |
| 75 | 7.85 | 7.12 | 5.47 | 5.42 | 7.58 | 6.73 |
| 76 | 8.02 | 7.32 | 5.48 | 5.44 | 7.82 | 6.96 |
| 77 | 8.19 | 7.53 | 5.49 | 5.46 | 8.09 | 7.21 |
| 78 | 8.36 | 7.75 | 5.50 | 5.48 | 8.38 | 7.47 |
| 79 | 8.52 | 7.96 | 5.50 | 5.49 | 8.67 | 7.75 |
| 80 | 8.67 | 8.16 | 5.51 | 5.50 | 9.00 | 8.05 |
| 81 | 8.81 | 8.36 | 5.51 | 5.51 | 9.34 | 8.39 |
| 82 | 8.94 | 8.55 | 5.51 | 5.51 | 9.70 | 8.73 |
| 83 | 9.06 | 8.73 | 5.51 | 5.51 | 10.10 | 9.12 |
| 84 | 9.16 | 8.90 | 5.51 | 5.51 | 10.52 | 9.53 |
| 85 & over | 9.26 | 9.05 | 5.51 | 5.51 | 10.96 | 9.97 |

Amounts for Monthly Life Income are based on age nearest birthday when income starts. Amounts for ages not shown will be furnished on request.

# Disability Rider-
# Waiver of Monthly Deductions

*In this rider, "we", "our" and "us" mean Equitable Variable Life Insurance Company. "You" and "your" mean the owner of the policy at the time an owner's right is exercised.*

**This Rider's Benefits and Its Cost.** We will waive the monthly deductions from the Policy Account as described in the policy when we receive proof that total disability of the insured person has existed continuously for at least six months, as provided in this rider.

If total disability begins on or after the insured person's fifth birthday and before the age 60 anniversary, we will waive all such deductions while total disability continues.

If total disability begins at or after the age 60 anniversary, we will waive only such deductions due to be made before the age 65 anniversary while total disability continues.

In this rider, "age 60 anniversary" and "age 65 anniversary" mean the policy anniversaries nearest the insured person's 60th and 65th birthdays, respectively.

While such deductions are being waived:

1. Insurance under the policy and under any additional benefit riders will be provided in accordance with their terms; and

2. You may not increase or decrease the Face Amount of Insurance; and

3. If your death benefit option under the policy is Option A when we start to waive deductions, we will then change the death benefit option to Option B-PLUS. You may not change the death benefit option while deductions are being waived; and

4. Except for the waiver of monthly deductions, your Policy Account will continue to operate as if monthly deductions were not being waived; and

5. You may continue to pay premiums under the policy except as stated below. Expense charges will be deducted from them as described in the policy. We will put the balance in the Policy Account. You may not pay premiums while the death benefit under the policy is a percentage of the amount in the Policy Account, as described on Page 6 of the policy.

Monthly deductions made from your Policy Account during total disability that are later waived will be refunded as credits to your Policy Account as of the dates they were subtracted. Such credits will be allocated to your value in the unloaned portion of our Guaranteed Interest Division and to your values in the investment divisions of our Separate Account on the basis of your monthly deduction allocation percentages in effect on the date the deductions were made. The value of your Policy Account will be determined as if such deductions had never been made.

While this rider is in effect, its cost will be a part of the monthly deduction from the Policy Account. The monthly cost is a percentage of the total monthly deduction from the Policy Account as described in the policy.

Such percentage will be determined by us from time to time, based on the insured person's sex, attained age and rating class. It will never be more than the percentage shown in the Table of Guaranteed Maximum Rates For Disability Waiver of Monthly Deductions on Page 4-Continued of the policy. Any change in the cost of insurance percentage we use for this benefit will apply to all individuals of the same class as the insured person.

**What is Total Disability?** Total disability means the insured person's complete inability, because of bodily injury or disease, to perform all of the substantial and material duties of his or her regular occupation. However, after 24 consecutive months of such disability, total disability will mean the insured person's complete inability to engage in any gainful occupation for which he or she is reasonably fitted by education, training, or experience.

We will also recognize the complete and irrecoverable loss of sight of both eyes, or the use of both hands or both feet, or of one hand and one foot as total disability. We will presume any such loss to be total disability even if the insured person engages in any occupation.

**What is Not Covered?** We will not waive such monthly deductions:

1. For a total disability that begins before the insured person's fifth birthday, or that begins while this rider is not in effect; or

2. If total disability results from:

   a. Intentionally self-inflicted injury; or

   b. Service in the armed forces of any country at war, including declared and undeclared war and resistance to armed aggression.

# *Term Insurance Rider on the Additional Insured Person*

*In this rider, "we", "our" and "us" mean Equitable Variable Life Insurance Company. "You" means the owner of the policy at the time an owner's right is exercised.*

**This Rider's Benefit and its Cost.** We will pay to the Beneficiary the amount of term insurance in effect under this rider at the additional insured person's death, when we receive proof that the additional insured person died before this rider's Expiry Date. The Expiry Date is the policy anniversary nearest the additional insured person's 70th birthday.

The Policy Information section of the policy or the rider that adds this benefit shows the name of the additional insured person and the amount of term insurance on the additional insured person. You may ask us to change the amount of term insurance on the additional insured person subject to our rules then in effect. We will send you a written notice showing each change. The notice is to be attached to and made part of this rider and the policy. The information in it will supersede the corresponding information in the Policy Information section of the policy or the rider that adds this benefit. We may require you to return the policy and this rider to us to make a change.

While this rider is in effect, its charge will be a part of the monthly deduction from the Policy Account. The monthly rate for this benefit for each $1,000 of term insurance in effect under this rider will be determined by us from time to time. The rate is based on the additional insured person's sex, attained age and rating class. It will never be more than the rate shown in the Table of Guaranteed Maximum Rates For Term Insurance On The Additional Insured Person on Page 4-Continued of the policy. Any change in the cost of insurance rates we use for this benefit will apply to all individuals of the same class as the additional insured person.

**The Beneficiary for this Benefit.** The term "Beneficiary" in this rider means only the Beneficiary for the benefit payable at the additional insured person's death. The term "beneficiary" in other provisions of the policy means only the beneficiary for the benefits payable at the insured person's death.

You will be the Beneficiary for the benefit payable at the additional insured person's death, unless another Beneficiary for it has been named in the application or by any later change and is living at the additional insured person's death.

While the additional insured person is living, you may change the Beneficiary by written notice in a form satisfactory to us. The change will take effect on the date you sign the notice, except that it will not apply to any payment we make or other action we take before we receive the notice.

If two or more persons are named Beneficiary, those surviving the additional insured person will share equally unless otherwise stated.

**How You May Exchange this Rider for a New Policy.** While this rider is in effect you may exchange it for a new policy on the life of the additional insured person. You may do this at the beginning of any policy month that is on or before the policy anniversary nearest the additional insured person's 62nd birthday. We will not ask for evidence of insurability, except as stated below for additional benefit riders.

The new policy will have an insurance amount equal to the amount of term insurance in effect on this rider on the date of exchange. Or, you may choose a lower amount allowed by our rules then in effect.

The Register Date of the new policy will be the date of exchange. Premiums for the new policy will be based on our rates in effect on that date. They will be for the additional insured person's then attained insurance age and for the same class of risk as for this rider. You may choose that the new policy be on any level premium plan of insurance for which it qualifies under our rules then in effect as to plan, amount, age and class of risk.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of the additional insured person's insurability satisfactory to us.

The first premium for the new policy must be received by us on or within 31 days before the date of exchange. We will tell you the amount of the first premium for the new policy on request.

**When this Rider Will Terminate.** This rider will not be in effect:

1. On and after its Expiry Date;
2. After the end of the grace period;
3. If this rider is exchanged for a new policy; or

**You Must Give Us Proof of Disability.** Before we waive any monthly deductions, we must be given written notice of claim, and proof that total disability of the insured person has existed continuously for at least six months. This must be done while total disability continues and while the insured person is still living, or as soon as reasonably possible. If notice or proof is not given as soon as reasonably possible, we will not refund as a credit monthly deductions due more than one year prior to the date that proof is given to us.

We may require proof at reasonable intervals that total disability continues. After total disability has continued for two years we will not require proof more than once a year. We will not require proof after the age 65 anniversary if monthly deductions have been waived for the five preceding years.

We may require examination of the insured person by our medical representatives at our expense as part of any proof of total disability.

We will not waive monthly deductions if proof is not furnished as required.

**When this Rider Will Terminate.** This rider will not be in effect:

1. At and after the age 65 anniversary; or

2. After the end of the grace period.

You may terminate this rider by asking for this in writing. The effective date of termination will be the beginning of the policy month which coincides with or next follows the date we receive your request.

A claim based on total disability that begins before termination of this rider will not be affected by the termination.

**When This Rider is Incontestable.** This rider will become incontestable only after it has been in effect, during the lifetime of the insured person and without the occurrence of total disability of the insured person, for two years from the later of: (a) the Date of Issue of the Policy; or (b) the date as of which this rider becomes effective if added after issue of the policy.

**How this Rider Relates to the Policy.** This rider is a part of the policy. Its benefits are subject to all the terms of this rider and the policy.

*Equitable Variable Life Insurance Company*

Molly K. Heines, Vice President & Secretary

Joseph J. Melone, Chairman & Chief Executive Officer

R90-216

## Insured Rider

*In this rider, "we", "our" and "us" mean Equitable Variable Life Insurance Company. "You" means the Owner of the policy at the time an Owner's right is exercised.*

ter the first policy year you may substitute coverage the life of a new insured person for coverage on the e of the original insured person, subject to conditions : determine. These conditions include but are not ited to the following:

We must be satisfied that the new insured person is insurable for the amount of insurance applied for.

The new insured person must join in the request for substitution and the owner of the policy must have an insurable interest in the new insured person. If the policy is assigned, the assignee must consent to the substitution of coverage.

The substitution may be made as of the beginning of any policy month if the new insured person is not then over age 65.

The new insured person's date of birth must not be later than the Register Date of the policy.

This policy must be in effect on the date of substitution with all monthly deductions from the Policy Account having been made, and with no such deductions then being waived nor amounts credited to the Policy Account by a disability rider.

Within 31 days before the date of substitution, we must receive: (a) written request for the substitution on our application form; (b) evidence of the new insured person's insurability satisfactory to us; and (c) any extra sum we may require.

We will require repayment of any loan and accrued loan interest on this policy that is in excess of the loan value at the time the substitution takes effect. We will carry over any loan and accrued loan interest not repaid.

Insurance on the original insured person will cease when insurance on the new insured person takes effect.

Any additional benefit riders in effect under the policy will terminate at the time of substitution of insureds. You may apply for any of them as to the new insured person. The issue of such riders will require our consent and evidence of insurability satisfactory to us.

10. In our determination the substitution must not affect the qualification of this policy as life insurance under the Internal Revenue Code or successor legislation, as interpreted by us.

**EFFECTS OF SUBSTITUTION.** Planned periodic premiums for the policy will be based on our rules in effect on its Register Date for the insurance age of the new insured person on that date. The Register Date for the policy will not be affected by the substitution of insureds. The face amount of insurance and the death benefit option in the policy will be the same as in effect immediately before the substitution, unless either (i) you ask for a change or (ii) a change is required in order to continue the qualification of the policy as life insurance under the Internal Revenue Code or successor legislation.

The substitution of a new insured person for the original insured person shall not preclude additional later substitutions of insureds, in which case reference to the "original insured person" shall include such substituted insureds as the context requires.

The time periods in the Incontestability and Suicide Exclusion provisions of the policy will begin on the date of substitution.

**HOW THIS RIDER RELATES TO THE POLICY.** This rider is a part of the policy. Its benefits are subject to all the terms of this rider and the policy.

*Equitable Variable Life Insurance Company*

olly K. Heines, Vice President & Secretary

Joseph J. Melone, Chairman & Chief Executive Officer

90-212       Substitution of Insured

4. If the insurance under the policy terminates. (However, if this is because the insured person died, the terms of the Survivor's Insurance Option and Temporary Insurance Benefit shall apply.)

You may terminate this rider by asking for this in writing. The effective date for termination will be the beginning of the policy month which coincides with or next follows the date we receive your request.

**How You May Restore this Rider's Benefits.** If you restore the policy's benefits, you may restore it with this rider in accordance with the section of the policy entitled "Restoration of Policy Benefits." You must also provide evidence of the additional insured person's insurability satisfactory to us.

**What if Age or Sex has Been Misstated?** If the additional insured person's age or sex has been misstated on any application, we will adjust any death benefits of this rider to reflect the correct age and sex.

**Suicide Exclusion.** If the additional insured person commits suicide, while sane or insane, within two years after the later of: (a) the Date of Issue of the policy; or (b) the date as of which this rider becomes effective if added after issue of the policy, our liability under this rider will be limited to the payment of a single sum equal to the monthly deductions made for it.

If the insured person commits suicide while this rider is in effect, the Survivor's Insurance Option and Temporary Insurance Benefit will apply.

**When this Rider is Incontestable.** We have the right to contest the validity of this rider based on material misstatements made in the application for it. However, this rider will become incontestable after it has been in effect during the lifetime of the additional insured person for two years from the later of: (a) the Date of Issue of the policy; or (b) the date as of which this rider becomes effective if added after issue of the policy. All statements made in such application are representations and not warranties.

**How this Rider Relates to the Policy.** This rider is a part of the policy. Its benefit is subject to all the terms of this rider and the policy.

This rider has no cash or loan value. It does not affect any reserve referred to in the policy.

You may choose while the additional insured person is living that any amount to be paid under this rider be applied for the benefit of the Beneficiary under the payment options described in the section of the policy entitled "How Benefits Are Paid." If you have not done this, the Beneficiary will have this right when the additional insured person dies. If you change the Beneficiary, any previous choice of payment options under this rider is cancelled. You may choose a payment option for the new Beneficiary in accordance with such section of the policy.

## SURVIVOR'S INSURANCE OPTION AND TEMPORARY INSURANCE BENEFIT

If the insured person dies while this rider is in effect, the following option and benefit are applicable subject to the Suicide Exclusion of this rider.

**The Survivor's Insurance Option.** If the insured person dies before the policy anniversary nearest the additional insured person's 62nd birthday, this rider may be exchanged for a new policy on the life of the additional insured person in accordance with the exchange provision of this rider. The exchange must be made within 90 days after the insured person's death. This may be done by you or, if you are not living, by the additional insured person. The new policy will take effect and have a Register Date on the 90th day after the insured person's death. All other terms and conditions of the exchange provision shall apply.

**The Survivor's Temporary Insurance Benefit.** If the additional insured person dies before the 90th day after the insured person's death, we will pay to the Beneficiary the amount of term insurance in effect under this rider on the additional insured person at the insured person's death. The payment will be made subject to the terms of this rider, including our receiving proof that the additional insured person died before that 90th day. We will pay any benefit for which there is no stated Beneficiary living at the death of the additional insured person to the children of the additional insured person who then survive, in equal shares. If none survive, we will pay the estate of the additional insured person.

*Equitable Variable Life Insurance Company*

Molly K. Heines, Vice President & Secretary

Joseph J. Melone, Chairman & Chief Executive Officer

R90-217

**1. PROPOSED INSURED** (Print Name as it is to appear on the policy)

a. Title: ☐ Mr. ☒ Mrs. ☐ Ms. ☐ Miss ☐ Other Title

Name: First `G A I L` Middle `J` Last `S A N D S`

b. Date of Birth Mo `03` Day `10` Yr `1948` d. Age Nearest Birthday `44` e. Sex ☐ M ☒ F f. Place of Birth: ST. LOUIS, MO

c. Soc. Sec. No. `493 50 2886` h. Previous/Other Name (if Applicable) _____ i. U.S. Citizen? ☒ Yes ☐ No If No, Country _____

Current Occupation(s): (1) Title: R.N. SPEC. (2) Duties: NURSING (3) Length of Time in Occupation: 4 yrs

*(If less than 1 year at current occupation, give previous in Special Instructions.)*

k. Residence

Care of: `C/O GAIL J. SANDS` Years there? 6 yrs

Current: `6295 BIRCHWOOD RD.` No & Street # ____ Apt/Suite/Bldg

`MARIANNA` City `FL` State `32446` Zip + 4 Code

l. Previous _____ No & Street _____ City _____ State _____ Zip + 4 Code
*(if less than 2 years at current)*

l. Tel.: (1) Home `904 592 2267` (2) Business `904 487 4703` m. Currently employed? ☒ Yes ☐ No ☐ Retired

n. Employer Name: DEPT OF CORRECTIONS, CENTRAL OFFICE, IN TALLAHASSEE o. Years Employed: 4 yrs

p. Employer Address: 2601 BLAIRSTONE RD TALLAHASSEE FL 32301
No & Street — City — State — Zip + 4 Code

**2. APPLICANT** (If not Proposed Insured)

a. Name: First _____ Middle _____ Last _____

b. Relationship to Proposed Insured _____

c. Address: Same as— ☐ Question 1.k. Residence or ☐ Question 1.p Business    d. Date of Birth: Mo ___ Day ___ Yr ___
Other:

Residence: _____ No & Street _____ Apt/Suite/Bldg _____ City _____ State _____ Zip + 4 Code

Business: _____ No & Street _____ City _____ State _____ Zip + 4 Code

**3. POLICYOWNER**

a. The Owner is: (1) ☒ Proposed Insured   (2) ☐ Applicant
(3) ☐ Other: (a) ☒ Individual (b) ☐ Corporation (c) ☐ Partnership (d) ☐ Trust Dated Mo ___ Day ___ Yr ___ (e) ☐ Qualified Plan
(f) Name of Person First _____ Middle _____ Last _____

Name of firm or plan _____

(g) If an individual, indicate: ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Miss ☐ Other Title ___ (h) Relationship to Insured _____

b. Owner's Mailing Address: Same as— ☐ Current Residence (1.k.) or ☐ Applicant's Residence (2.c.)
Other:

Care of: `C/O`

_____ No & Street _____ Apt/Suite/Bldg

_____ City _____ State _____ Zip + 4 Code

c. Answer if Policyowner is not Proposed Insured: (1) Soc. Sec. or Tax I.D. Number _____

(2) Date of Birth: ☐ Same as 2.d. or Mo ___ Day ___ Yr ___ (3) Tel.: _____

d. Successor Owner (if desired) Give full name: _____ and Relationship to Insured: _____

If the Owner or Successor Owner is other than the Proposed Insured, and if all persons so designated die before the Proposed Insured, the Owner will be the estate of the last such person to die, except where the Proposed Insured is a child. In cases where the Proposed Insured is a child and the Applicant is also the Owner or Successor Owner and the Applicant dies before the insured child, the child will be the Owner unless otherwise designated. In such designation, include Owner's full name and relationship to the child, and the Owner's social security or tax number.

**4. BENEFICIARY for Insurance on Proposed Insured.** Include Full Name and Relationship to Proposed Insured.

a. Primary Beneficiary(ies):
Name(s) — Relationship — Name(s) — Relationship
(1) LIONEL J. SANDS — HUSBAND — (2)

b. Contingent Beneficiary(ies)
(1) ELOISE E. HEAPS - MOTHER — (2)

Note: Unless otherwise requested, the contingent beneficiary will be the surviving children of the Insured in equal shares. If none survive, payment will be made to the Insured's estate. The Beneficiary(ies) under any Term Insurance Rider on any Additional Insured or on a Child will be as stated in those riders, unless otherwise designated in Special Instructions. In any such designation, give full name and relationship of beneficiary(ies) to the Insured.

EV4-200X

NO. A 056711

## 5. PLAN DESCRIPTION AND PREMIUM PAYMENT METHOD

**a.** Plan _INCENTIVE LIFE 2000_

**b.** Initial Face Amount $ _200,000_

**c.** If Modified Premium VLI (Complete only if more than Scheduled Premium. If Billed Premium specified is less than Scheduled Premium, we automatically bill the Scheduled Premium.)
Billed Premium $ _____

**d.** If Flexible Premium VLI:
(a.) Initial Premium Payment $ _2886.23_
(b.) Planned Periodic Payments $ _2877.00_

**e.** Death Benefit Option: ☒ Option A  ☐ Option B (B-Plus for Flex. Prem.)

**f.** Premium Mode: ☒ Annual  ☐ Semi-Annual  ☐ Quarterly
☐ System-Matic (Complete S-M form)

**g.** ☐ Salary Allotment   (4) Payroll No. _____
(1) Unit Name _____  (5) Allotor's Name _____ (if other than Proposed Insured)
(2) Register Date ___/___/___   (6) Allotor's No. _____
(3) Unit/Sub Unit No. [ ][ ][ ][ ][ ][ ][ ]

**h.** Initial Allocations To Investment Options*

| | (Whole percentages only) | For Premiums | For Deductions |
|---|---|---|---|
| (1) Guaranteed Interest | | (1) ___% | (1) ___% |
| (2) Money Market | | (2) ___% | (2) ___% |
| (3) Intermediate Gov't. Securities | | (3) ___% | (3) ___% |
| (4) Short-Term World Income | | (4) ___% | (4) ___% |
| (5) High Yield | | (5) ___% | (5) ___% |
| (6) Balanced | | (6) ___% | (6) ___% |
| (7) Common Stock | | (7) _100_% | (7) _100_% |
| (8) Global | | (8) ___% | (8) ___% |
| (9) Aggressive Stock | | (9) ___% | (9) ___% |
| (10) Asset Allocation Series: | | | |
| a. Conservative Investors | | (10a.) ___% | (10a.) ___% |
| b. Growth Investors | | (10b.) ___% | (10b.) ___% |
| (11) | | (11) ___% | (11) ___% |
| (12) | | (12) ___% | (12) ___% |
| | | 100% | 100% |

* Except for initial allocations to Guaranteed Interest, your Policy Account will be allocated according to these percentages on the first business day 20 days after the date of issue of your policy. Before that time, all Policy Account allocation (except to Guaranteed Interest) will be to the Money Market Division. Consult prospectus for investment option information.

## 6. OPTIONAL BENEFITS

**a.** ☐ Accidental Death Benefit* (specify amount) $ _____

**b.** ☐ Disability Premium Waiver* (Modified Premium VLI only)

**c.** ☒ Disability - Waiver Monthly Deductions* (Flexible Premium VLI only)

**d.** Other _____

* **Juvenile Limitations:** If applied for, the Accidental Death Benefit is payable only if the Child dies as a result of an accident after the Child's first birthday; the Disability Waiver Benefits are effective only if the Child becomes totally disabled on or after the Child's 5th birthday.

**TERM RIDERS**

**e.** ☒ Renewable Term; (1) On Insured $ _____ (Available on Modified Premium VLI only)
(2) On Add'l Insured** $ _200,000_

**f.** ☐ Children's Term** $ _____ Units _____

** If coverage is elected be sure to complete applicable parts of Question 8, and answer Questions 10 through 16 with respect to the Additional Insured and/or Children for Term Insurance Rider.

## 7. SUITABILITY (All VLI Plans)

**a.** Have you, the Proposed Insured or the Owner, if other than the Proposed Insured, received:
(1) a prospectus for the policy(ies) applied for? .................................................... ☒ Yes ☐ No
Date of prospectus _11/29/91_ Date of any supplement(s) ___/___/___ ___/___/___ ___/___/___
(2) a prospectus for the Hudson River Trust? .................................................... ☒ Yes ☐ No
Date of prospectus _2/28/91_ Date of any supplement(s) _8/23/91; 2/14/92; 3/12/92_
(3) a prospectus for the designated investment company(ies) .................................................... ☐ Yes ☐ No
Date of prospectus ___/___/___ Date of any supplement(s) ___/___/___ ___/___/___ ___/___/___

**b.** Do you understand that (i) policy values reflect certain deductions and charges and may increase or decrease depending on credited interest for Guaranteed Interest Division and/or the investment experience of Separate Account Divisions and (ii) cash value will be subject to a surrender charge within the first 15 years of the issue date (and within 15 years of a face amount increase for Flexible Premium VLI) upon policy surrender, lapse or face amount reduction? .................................................... ☒ Yes ☐ No

**c.** With this in mind, is (are) the policy(ies) in accord with your insurance and long-term investment objectives and anticipated financial needs? .................................................... ☒ Yes ☐ No

## 8. COMPLETE FOR PROPOSED ADDITIONAL INSURED, CHILDREN'S TERM RIDER OR JUVENILE INSURANCE

Also answer Questions 10 through 16 with respect to Proposed Additional Insured or Children under Children's Term Rider.

**a.** Title: ☒ Mr. ☐ Mrs. ☐ Ms. ☐ Miss ☐ Other Title [ ][ ][ ][ ]

**b.** Proposed Add'l Insured: First _LIONEL_  Middle _JT._  Last _SANDS_

Date of Birth Mo [0][3] Day [0][2] Yr [1][9][4][6]   Age Nearest Birthday [4][6]   Sex ☒ M ☐ F   Place of Birth: _JACKSON, MICH._

Soc. Sec. No. [3][8][0][4][4][3][4][8][0]   Previous/Other Name (if Applicable) _____

Relationship of Owner to Add'l Insured: _HUSBAND_   State of Residence: _FL_

Current Occupation(s): (1) Title: _HEALTH ADMINISTRATOR_ (2) Duties: _____ (3) Length of Time in Occupation: _3 1/6_
(If less than 1 year at current occupation, give previous in Special Instructions.)

**c.** Children for Term Insurance Rider (Use Special Instructions if more space is needed.)*

First / Middle / Last

Date of Birth Mo [ ] Day [ ] Yr [ ]   Sex ☐ M ☐ F   Relationship to Proposed Insured _____

Date of Birth Mo [ ] Day [ ] Yr [ ]   Sex ☐ M ☐ F   Relationship to Proposed Insured _____

Date of Birth Mo [ ] Day [ ] Yr [ ]   Sex ☐ M ☐ F   Relationship to Proposed Insured _____

* **Note:** To be eligible, children (including stepchildren and legally adopted children) must not have reached their 18th birthday. Coverage does not begin until a child is 15 days old.

**d.** For Juvenile Insurance (Ages 0-14): (1) Will there be more life insurance in effect on this Child than on any other child in the family? ☐ Yes ☐ No
If "Yes", explain _____   (2) Total Life Insurance in effect on Applicant $ _____

EV4-200X

2

## 9. OPAI. COMPLETE IF EXERCISING OPTION TO PURCHASE ADDITIONAL INSURANCE

**a.** (1) ☐ Regular;  (2) ☐ Birth or Adoption; Child's Name _____; Date of Birth or Adoption __/__/__;  (3) ☐ Alternate

**b.** Existing original policy no. _____ **c.** Option Date __/__/__ **d.** Option Amount $ _____

**e.** If applying for Disability Premium Waiver, is Proposed Insured now totally disabled as defined in the Disability Premium Waiver Provision of the original policy indicated above in b.? ........................................................................................................ ☐ Yes ☐ No

This application is made under a provision in the indicated existing policy permitting the purchase of additional individual life insurance (the "Option Provision"). If this application is made within the time allowed and in accordance with the other terms in the Option Provision, including timely payment of the full first premium for the additional insurance, then the additional insurance shall take effect upon the terms of the policy the Insurer would issue. Otherwise, the additional insurance shall not take effect. *(Answer Questions 10 through 16 only if evidence of insurability is required in connection with an optional benefit or any excess of the insurance amount applied for over the insurance amount permitted by the Option Provision.)*

## OTHER INFORMATION   For any "Yes" response, provide full details.

### Has any person proposed for insurance:

**10. a.** Ever had a driver's license suspended or revoked, or within the last 3 years been convicted of 2 or more moving violations
   or driving under the influence of alcohol or drugs? ............................................................... ☐ Yes ☒ No
   (If "Yes", include dates, types of violation, and reason for suspension or revocation.)

   **b.** Any plan to travel or reside outside the United States? ........................................................ ☐ Yes ☒ No

   **c.** Any other life insurance now in effect or application now pending? ...................................... ☐ Yes ☒ No
   (Give companies and amounts and policy numbers if Equitable.)

   **d.** Been disabled for 2 or more weeks within the last 2 years? ................................................ ☐ Yes ☒ No

**11. a.** In the last year flown other than as a passenger or plan to do so? ..................................... ☐ Yes ☒ No
   If "Yes", enter total flying time at present _____ hours; last 12 mos. _____ hours; next 12 mos. _____ est. hours.
   (Complete Aviation Supplement for crop dusting; pilot instruction; or commercial, competitive, helicopter, military, stunt or test flying.)

   **b.** Engaged within the last year or any plan to engage in motor racing on land or water, underwater diving, skydiving,
   ballooning, hang gliding, parachuting or flying ultra-light aircraft? (If "Yes", complete Avocation Supplement.) ............. ☐ Yes ☒ No

   **c.** Ever had an application for life or health insurance declined, that required an extra premium or was otherwise modified? ...... ☐ Yes ☒ No

   **d.** Replaced or changed any existing insurance or annuity (or any plan to do so) assuming the insurance applied for will be issued? ☐ Yes ☒ No
   (If "Yes", state companies, plans and amounts.)

## ANSWER Questions 12-16 only if Non-Medical

**12. a.** Proposed Insured: Height _5_ Ft. _2_ In.; Weight _140_ lbs.  **b.** Additional Insured: Height _6_ Ft. _0_ In.; Weight _188_ lbs.

### Has any person proposed for insurance:

**13. a.** Ever had or been treated for heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor, cancer,
   respiratory or neurological disorder? ............................................................................. ☐ Yes ☒ No

   **b.** In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? ............. ☐ Yes ☒ No
   (Include medical check-ups in the last 2 years. Do not include colds, minor injuries or normal pregnancy.)

**14.** In the last 12 months: **a.** Smoked cigarettes? ............................................................ ☐ Yes ☒ No
   **b.** Used any other form of tobacco? ................................................... ☐ Yes ☒ No

**15.** In the last 10 years:

   **a.** Used, except as legally prescribed by a physician, tranquilizers; barbiturates or other sedatives; marijuana,
   cocaine, hallucinogens or other mood-altering drugs; heroin, methadone or other narcotics; amphetamines
   or other stimulants; or any other illegal or controlled substances? ............................................... ☐ Yes ☒ No

   **b.** Received counseling or treatment regarding the use of alcohol or drugs including attendance at meetings or
   membership in any self-help group or program such as Alcoholics Anonymous or Narcotics Anonymous? .............. ☐ Yes ☒ No

**16.** In the last 10 years, been:

   **a.** Diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS)
   or AIDS-Related Complex (ARC)? ................................................................................. ☐ Yes ☒ No

   **b.** Treated by a member of the medical profession for AIDS or ARC? ............................................. ☐ Yes ☒ No

## 17. DETAILS/SPECIAL INSTRUCTIONS/ADDITIONAL INFORMATION For each "Yes" answer give Question Number, name of person(s) affected, and full details. For 13-16 include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.

| Ques. No. | Name of Person | Details |
|-----------|----------------|---------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |



**18. COMPLETE IF MONEY IS PAID OR AN APPROVED PAYMENT AUTHORIZATION IS SIGNED BEFORE THE POLICY IS DELIVERED:** Have the undersigned read and do they agree to the conditions of Equitable Variable's Temporary Insurance Agreement, including: (i) the requirement that all of the conditions in that Agreement must be met before any temporary insurance takes effect, and (ii) the $500,000 insurance amount limitation? ☒ Yes ☐ No   *(If "No," or if any Person Proposed for Insurance has been diagnosed or treated for Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC) by a member of the medical profession within the last 10 years or had cancer, a stroke, or a heart attack within the last year, a premium may not be paid nor an approved payment authorization signed before the policy is delivered.)* ☒ Amount Paid: $ *2886.23* . *(Draw checks to the order of Equitable Variable.)* ☐ **Approved Payment Authorization signed.**

**19. SOCIAL SECURITY OR TAX I.D. NUMBER CERTIFICATION.** I, the proposed policyowner, by my signature below, certify under penalties of perjury that (i) the number shown in question 3.c.(1) or 1.g. of this form is my correct taxpayer identification number, and (ii) I ☐ am ☒ am not subject to a backup withholding order issued by the Internal Revenue Service. I understand that failure to furnish the correct information may subject me to Federal backup withholding.

**AGREEMENT.** Each signer of this application agrees that:

(1). The statements and answers in all parts of this application are true and complete to the best of my (our) knowledge and belief. Equitable Variable may rely on them in acting on this application.

(2). Equitable Variable's Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect if money is paid or an approved payment authorization is signed, before the policy is delivered. Temporary Insurance is not provided for a policy or benefit applied for under the terms of a guaranteed insurability option or a conversion privilege.

(3). Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full initial premium for it is paid, or an approved payment authorization is signed, while the person(s) proposed for insurance is (are) living; (b) before any Register Date specified in this application; and (c) unless to the best of my (our) knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time such premium is paid or an approved payment authorization is signed.

(4). No agent or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement, nor to waive any of Equitable Variable's rights or requirements. Equitable Variable shall not be bound by any information unless it is stated in Application Part 1 or Part 2.

(5). **Policy values increase or decrease depending on credited interest for the Guaranteed Interest Division and/or investment experience of the Separate Account Divisions and reflect certain deductions and charges.**

| VLI Notice: Available on request are illustrations of benefits, including death benefits, policy values and cash surrender values. |

## ACKNOWLEDGEMENT AND AUTHORIZATIONS

**UNDERWRITING PRACTICES.** I (We) have received a statement of the underwriting practices of Equitable Variable which describes how and why Equitable Variable obtains information on my insurability, to whom such information may be reported and how I may obtain it. The statement also contains the notice required by the Fair Credit Reporting Act.

**AUTHORIZATIONS.**

**To Obtain Medical Information.** I (we) authorize any physician, hospital, medical practitioner or other facility, insurance company, and the Medical Information Bureau to release to Equitable Variable and its legal representative any and all information they may have about any diagnosis, treatment and prognosis regarding my physical or mental condition.

**To Obtain Non-Medical Information.** I (we) authorize any employer, business associate, government unit, financial institution, Consumer Reporting Agency, and the Medical Information Bureau to release to Equitable Variable and its legal representative any information they may have about my occupation, avocations, finances, driving record, character and general reputation. I (we) authorize Equitable Variable to obtain investigative consumer reports, as appropriate.

**To Use and Disclose Information.** I (we) understand that the information that I (we) authorize Equitable Variable to obtain will be used by Equitable Variable to help determine my insurability or my eligibility for benefits under an existing policy. I (we) authorize Equitable Variable to release information about my insurability to its reinsurers, contractors and affiliates, my (our) Equitable Variable Agent, and to the Medical Information Bureau, all as described in the statement of Equitable Variable's underwriting practices or to other persons or businesses performing business or legal services in connection with my application or claim of eligibility for benefits, or as may be otherwise lawfully required, or as I (we) may further authorize. I (we) understand that I (we) have the right to learn the contents of any report of information (generally, through my physician, in the case of medical information).

**COPY OF AUTHORIZATIONS.** I (we) have a right to ask for and receive a true copy of this Acknowledgement and Authorizations signed by me (us). I (we) agree that a reproduced copy will be as valid as the original.

**DURATION.** I (we) agree that these authorizations will be valid for 12 months from the date shown below.

| | *Laws in your state may make it a crime to fill out an insurance or annuity application with information you know is false or to leave out material facts.* |
|---|---|

Dated at City  GRAND RIDGE, FL

X ~ [signature]
Signature of Proposed Insured or Applicant if Proposed Insured is a Child, Issue Age 0-14.

State  FLORIDA

on  4/16/92 _____ 19____

X ~ [signature]
Signature of Proposed Additional Insured, if any.

Signature of Agent (Registered Representative)
[signature]  Janice W. Frank

X
Signature(s) of Purchaser and Owner if not Proposed Insured.
(If a corporation, show firm's name and signature of authorized officer.)

EV4-200X

4

# AXA EQUITABLE
**LIFE INSURANCE COMPANY**

A Stock Life Insurance Company
Home Office: 787 Seventh Avenue, New York, New York 10019-6018

Flexible Premium Variable Life Insurance Policy. Insurance payable upon death before Final Policy Date. Policy Account payable on Final Policy Date. Adjustable Death Benefit. Premiums may be paid while insured person is living and before the Final Policy Date. Premiums must be sufficient to keep the policy in force. Values provided by this policy are based on declared interest rates, and on the investment experience of the investment divisions of a separate account which in turn depends on the investment performance of the corresponding portfolios of investment companies. They are not guaranteed as to dollar amount. Investment options are described on Page 9. This is a non-participating policy.

No. 90-300

## STATE OF FLORIDA

## OFFICE of VITAL STATISTICS

### CERTIFIED COPY

## CERTIFICATE OF DEATH
## FLORIDA

LOCAL FILE NO.

| 1 DECEDENT'S NAME | FIRST: Gail | MIDDLE: Joanne | LAST: Sands | 2 SEX: Female |
|---|---|---|---|---|

| 3 DATE OF DEATH (Month, Day, Year): June 9, 2001 | 4 SOCIAL SECURITY NUMBER: 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 | 5a AGE-Last Birthday (years): 53 | 5b UNDER 1 YEAR Months Days | 5c UNDER 1 DAY Hours Minutes |
|---|---|---|---|---|

6 DATE OF BIRTH (Month, Day, Year): March 10, 1948
7 BIRTHPLACE (City and State or Foreign Country): St. Louis, Missouri
8 WAS DECEDENT EVER IN US ARMED FORCES? (Yes or No): YES

9a PLACE OF DEATH (Check only one - see instr. on other side): Swimming Pool
HOSPITAL: __ Inpatient __ ER/Outpatient __ DOA   OTHER: __ Nursing Home __ Residence _X_ Other (Specify)

9c FACILITY NAME (If not institution, give street & number): 6295 Birchwood Road
9d CITY, TOWN, OR LOCATION OF DEATH: Marianna
9e IN SIDE CITY LIMITS? (Yes or No): NO
9e COUNTY OF DEATH: Jackson

| 10a DECEDENT'S USUAL OCCUPATION: ARNP | 10b KIND OF BUSINESS/INDUSTRY: Division of Corrections | 11 MARITAL STATUS - Married, Never Married, Widowed, Divorced (Specify): Married | 12 SURVIVING SPOUSE (If wife, give maiden name): Lionel J. Sands |
|---|---|---|---|

| 13a RESIDENCE - STATE: Florida | 13b COUNTY: Jackson | 13c CITY, TOWN OR LOCATION: Marianna | 13d STREET AND NUMBER: 6295 Birchwood Road |
|---|---|---|---|

13e INSIDE CITY LIMITS? (Yes or No): NO
13c ZIP CODE: 32448
14 IS DECEDENT OF HISPANIC OR HAITIAN ORIGIN? (Specify No or Yes - If yes, specify Haitian, Cuban, Mexican, Puerto Rican, etc.) _X_ No __ Yes   Specify:
15 RACE - American Indian, Black, White, etc. Specify: White
16 DECEDENT'S EDUCATION Elementary/Secondary (0-12) College (1-4 or 5+): 5

17 FATHER'S NAME (First, Middle, Last): Guy Heaps
18 MOTHER'S NAME (First, Middle, Maiden Surname): Eloise Raabe

19a INFORMANT'S NAME (Type/Print): Lionel J. Sands
19b MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code): 6295 Birchwood Rd  Marianna, FL  32447

20a METHOD OF DISPOSITION: __ Burial __ Cremation _X_ Removal from State __ Donation __ Other (Specify)
20b PLACE OF DISPOSITION (Name of cemetery, crematory, or other place): Southern-Heritage Crematory  Dothan, Alabama

21a SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH: James A. [signature]
21b LICENSE NUMBER (of Licensee): FE 4105
21c NAME AND ADDRESS OF FACILITY: Lord Funeral Home, Inc.  P.O. Box 369 Marianna, FL  32447

22a To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) as stated (Signature and Title):
22b DATE SIGNED (Mo., Day, Yr):
22c HOUR OF DEATH:
22d NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print):

23a On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) stated (Signature and Title): [signature] Michael Berkland D.O.
23b DATE SIGNED (Mo., Day, Yr): 7-21-02
23c HOUR OF DEATH: 1244 Hours
23d MEDICAL EXAMINER'S CASE #: 01.14.00217

24 NAME AND ADDRESS OF CERTIFIER (PHYSICIAN, MEDICAL EXAMINER) (Type or Print): Michael E. Berkland, D.O.  3737 Frankford Avenue  Panama City, Florida 32405

25a SUBREGISTRAR - SIGNATURE AND DATE:
25b REGISTRAR - SIGNATURE AND DATE: Rebecca Ham, Deputy
25c DATE REGISTERED: July 23, 2002

26 PART I Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.

IMMEDIATE CAUSE (Final disease or condition resulting in death) →
a. Asphyxia (994.1)
  DUE TO (OR AS A CONSEQUENCE OF):
Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST
b. Swimming Pool Drowning (E964)
  DUE TO (OR AS A CONSEQUENCE OF):
c. Closed Head Injury (803.0)
  DUE TO (OR AS A CONSEQUENCE OF):
d. Blunt Force Head Injury (E968.2)

Approximate Interval Between Onset and Death

PART II Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

27a WAS AN AUTOPSY PERFORMED? (Yes or No): Yes
27b WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? (Yes or No): Yes
28 CASE REPORTED TO MEDICAL EXAMINER? (Yes or No): Yes

30a IF SURGERY IS MENTIONED IN PART I or II, ENTER CONDITION FOR WHICH IT WAS PERFORMED:
30b DATE OF SURGERY (Mo., Day, Year):
IF FEMALE, WAS THERE A PREGNANCY IN THE PAST 3 MONTHS? __ Yes _X_ No

PROBABLE MANNER OF DEATH (Specify) Natural, accident, suicide, homicide, or undetermined: Homicide

32a DATE OF INJURY (Month, Day, Year): June 9, 2001
32b TIME OF INJURY: Unknown
32c INJURY AT WORK? (Yes or No): No
32d DESCRIBE HOW INJURY OCCURRED: Decedent was struck in head by another.

32e PLACE OF INJURY - At home, farm, street, factory, etc (Specify): Residential curtilage
32f LOCATION (Street and Number or Rural Route Number, City or Town, State): 6295 Birchwood Road, Marianna, Fl.

THIS IS A CERTIFIED TRUE AND CORRECT COPY OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE

BY: Rebecca Ham, Deputy    State Registrar

WARNING: THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK.
THE DOCUMENT FACE CONTAINS A MULTI-COLORED BACKGROUND AND GOLD EMBOSSED SEAL. THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEALS IN THERMOCHROMIC INK.
9337715

HEALTH
DOH FORM 1564A (5/99)

VOID IF ALTERED OR ERASED

CERTIFICATION OF VITAL RECORD

EXHIBIT
"B"